# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CARBONE and RYAN ADKINS, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>LIMITED RUN GAMES, INC.,<br><br>       Defendant. | Civil Action No. 2:24-cv-08861-NJC-JMW<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.    SUMMARY OF ALLEGATIONS ................................................................................ 2

II.    PROCEDURAL HISTORY ......................................................................................... 3

III.    KEY TERMS OF THE PROPOSED SETTLEMENT ................................................ 3

    A.    The Proposed Class ............................................................................................ 3

    B.    Monetary Compensation ..................................................................................... 4

    C.    Prospective Relief ............................................................................................... 4

    D.    Release ................................................................................................................ 5

    E.    Notice and Administrative Expenses .................................................................. 5

    F.    Service Award .................................................................................................... 5

    G.    Attorneys' Fees, Costs, and Expenses ............................................................... 5

ARGUMENT ....................................................................................................................... 6

I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...................... 6

    A.    The *Grinnell* Factors ......................................................................................... 8

        1.    Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1) .... 8

        2.    The Reaction Of The Class (*Grinnell* Factor 2) .............................................. 9

        3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3) ..................................................................... 9

        4.    Plaintiffs Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5) .. 10

        5.    Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6) ...................................................................................... 11

        6.    Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7) ................ 11

        7.    The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9) .................................... 11

    B.    The Proposed Class Should Be Certified for Settlement Purposes....................... 13

        1.    The Settlement Class Meets the Requirements of Rule 23(a) ........................ 14

        2.    Common Questions of Law and Fact Predominate Under Rule 23(b)(3) ...................... 17

    C.    The Court Should Approve the Form and Content of the Proposed Notice ....................... 18

CONCLUSION .................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adkins v. Facebook, Inc.,*
   No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021) .................................................. 12

*Alcantara v. CNA Mgmt., Inc.,*
   264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) ................................................................ 14

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) .............................................................................................. 13

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ......................................................................... 6, 7, 12

*Cohen v. J.P. Morgan Chase & Co.,*
   262 F.R.D. 153 (E.D.N.Y. 2009) .......................................................................... 13

*Consol. Rail Corp. v. Town of Hyde Park,*
   47 F.3d 473 (2d Cir. 1995) ................................................................................... 14

*Cruz Guerrero v. Montefiore Health Sys. Inc.,*
   No. 22-CV-9194 (KHP), 2025 WL 100889 (S.D.N.Y. Jan. 15, 2025) ................... 18

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................ 8

*Denney v. Deutsche Bank AG,*
   443 F.3d 253 (2d Cir. 2006) ................................................................................. 13

*Esposito v. Nations Recovery Center, Inc.,*
   2021 WL 2109077 (D. Conn. May 25, 2021) ........................................................ 11

*Fox v. Cheminova,*
   213 F.R.D. 113 (E.D.N.Y. Feb. 28, 2003) ............................................................ 17

*Frank v. Eastman Kodak Co.,*
   228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................................... 11

*Freeland v. AT & T Corp.,*
   238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) ........................................................... 15

*Fresno Cty. Emples. Ret. Ass'n v. Isaacson,*
   925 F.3d 63 (2d Cir. 2019) ..................................................................................... 6

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
   239 F.R.D. 363 (S.D.N.Y. Jan. 29, 2007) ............................................................ 14

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987) ............................................................................... 17

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000),..... 8, 9, 10

*In re Google LLC Street View Elec. Commc'ns Litig.,*
   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ..................................................... 12

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ........................................................ 7

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ............................................................................... 18

*In re Vizio, Inc., Consumer Privacy Litig.*,
   2019 WL 12966638 (C.D. Cal. July 31, 2019) ............................................... 12, 14

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ....................................................... 9

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014) ........................................................ 15

*Lane v. Facebook, Inc.*,
   No. C 08-3845 RS, 2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) ...... 12

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. May 29, 2014) ..................................................... 13, 14

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir.1997) ............................................................ 13, 15, 16, 17

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) ................................................................................. 6

*Moog Et Al V. The Christian Broadcasting Network, Inc.,*
   No. 1:24cv501 ECF at 26. (E.D. Va. Jan. 29, 2025) ........................................... 12

*Moses v. The New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ................................................................................. 6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .......................................................................................... 18

*Robinson v. New York City Transit Auth.,*
   2020 WL 5884055 (S.D.N.Y. Aug. 31, 2020) ..................................................... 16

*Robinson v. New York City Transit Auth.*,
   2020 WL 5814189 (S.D.N.Y. Sept. 30, 2020) ..................................................... 16

*Steinberg v. Nationwide Mut. Ins.* Co.,
    224 F.R.D. 67 (E.D.N.Y. Sept. 4, 2004) ................................................................. 13

*TBK Partners, Ltd. v. Western Union Corp.*,
    517 F. Supp. 380 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982) ..................... 8

*Torres v. Gristede's Oper. Corp.*,
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................................ 9

*Waller et al v. Times Publishing Co.*,
    No. 2023-027889-CA-01 (Fla. 17th Cir. Ct.) ...................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................................. 5

**Statutes**

Fed. R. Civ. P. 23(e)(2) .......................................................................................... 7
Video Privacy Protection Act 18 U.S.C. § 2710, *et seq.* ........................................... 1

**Other Authorities**

*Newberg on Class Actions* § 11.41 (4th ed. 2002) ..................................................... 6

**Rules**

Fed. R. Civ. P. 23(a) .......................................................................................... 13, 14
Fed. R. Civ. P. 23(b)(3) ........................................................................................ 13
Fed. R. Civ. P. 23(e)(2)(C)-(D) ............................................................................... 6
Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................... 6

## INTRODUCTION

Under Federal Rule of Civil Procedure 23(e), Plaintiffs John Carbone and Ryan Adkins (collectively, "Plaintiffs") respectfully move the Court to enter an order certifying the settlement class as described herein (the "Class") for settlement purposes only and preliminary approval of the class action settlement (the "Settlement").

The Settlement resolves Plaintiffs' claims under the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq* ("VPPA")., against Limited Run Games, Inc. ("Defendant," "Limited Run Games," or "LRG," and collectively with Plaintiffs, the "Parties") which are the subject of the above-captioned matter (the "Litigation" or "Action").

In the Litigation, Plaintiffs alleged that Defendant voluntarily installed Meta Platforms, Inc.'s ("Meta", f/k/a Facebook, Inc.) tracking Pixel on its website (https://limitedrungames.com/, the "Website") and configured the Pixel to cause the disclosure of subscribers' Facebook Identification Number ("Facebook ID") and the video content that subscribers were requesting or obtaining ("Video Content") to Meta, without the subscribers' consent. Plaintiffs also alleged the use of other tracking tools that shared Personally Identifying Information ("PII") to Facebook and, upon information and belief, other third parties. Defendant disputes that it caused Plaintiffs' video game purchases and PII to be sent to Facebook and other third parties without Plaintiffs' knowledge and consent each time Plaintiffs requested and viewed video content and video games sold through the Website. The Parties recognize the expense and risk associated with continuing the Litigation and therefore have reached an arm's length settlement of the issues and claims, which they now present to the Court for preliminary approval.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of Court awarded fees, expenses, service awards, and administrative costs,

Settlement Class Members who submit valid claims through a simple claims process will each receive a pro rata share of the Settlement Fund. Plaintiffs and their counsel have vigorously represented the interests of the Settlement Class and, through extensive arm's length negotiations overseen by an experienced mediator, Justice Robert Dondero (Ret.), have developed an understanding of the strength and weaknesses of this Action.

For the reasons set forth herein, Plaintiffs respectfully request the Court enter an order: (1) preliminarily approving the Settlement, and certifying the Settlement Class identified in the Proposed Settlement Agreement (*see* Declaration of Mark S. Reich in Support of Plaintiffs' Unopposed Motion for Preliminary Approval Decl. (hereinafter "Reich Decl.")  Exhibit G**)**; (2) appointing Plaintiffs as Class Representatives for the Settlement Class; (3) appointing Gucovschi Rozenshteyn, PLLC and Levi & Korsinsky LLP as Co-Class Counsel; (4) directing notice to the Settlement Class and approve the form and manner thereof; and (5) authorizing the retention of Kroll, LLC as Settlement Administrator.

## **BACKGROUND**

### **I.  SUMMARY OF ALLEGATIONS**

Defendant, through its Website, sells and/or delivers audiovisual materials, such as video games containing cinematic cut-scenes. To purchase video games, merchandise, and/or watch prerecorded videos on the Website, and/or subscribe to the Website, and/or create an account on the Website, consumers must provide, at a minimum, their IP address and email address. In this Litigation, Plaintiffs allege that Defendant intentionally disclosed PII to third parties through software it installed on its Website in violation of the VPPA.

## II.  PROCEDURAL HISTORY

Plaintiff John Carbone filed suit against Defendant by filing a complaint on December 27, 2024 in the United States District Court for the Eastern District of New York.

The Court entered a scheduling order setting an Initial Conference via Zoom for March 4, 2025 at 11:00 AM before Magistrate Judge James M. Wicks.  (ECF No. 7).

The Parties agreed to engage in settlement discussions and proceed with a mediation with Justice Robert Dondero (Ret.) of JAMS. The Parties participated in an all-day virtual mediation session with Justice Robert Dondero (Ret.) on April 21, 2025. During the mediation session and with Justice Robert Dondero (Ret.)'s  continued assistance, the parties reached a settlement, which is memorialized in the Proposed Settlement Agreement. *See* Reich Decl., Ex. G.

Defendant filed a Joint Status Report on April 30, 2025. (ECF No 10).

The Court reviewed the Joint Status Report and set deadlines for an amended complaint (May 8, 2025), a preliminary settlement approval by June 20, 2025, and an in-person conference on July 9, 2025. (ECF No. 10).

On May 7, 2025, Plaintiffs John Carbone and Ryan Adkins filed an amended putative class action in the United States District Court for the Eastern District of New York. The amended complaint alleged violations of the Video Privacy Protection Act 18 U.S.C. § 2710, *et seq.* (ECF No. 11).

## III. KEY TERMS OF THE PROPOSED SETTLEMENT

### A.  The Proposed Class

The Settlement Class is comprised of all persons who accessed the Limited Run Game Service in the United States and watched a pre-recorded video or purchased a video game containing a Cut Scene between January 1, 2016 and June 20, 2025. Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over this Action and their immediate

family members and staff members; (2) LRG, its subsidiaries, parent companies, successors, predecessors, and any entity in which the LRG has a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *See* Reich Decl., Ex. G, Proposed Settlement Agreement.

### B. Monetary Compensation

Within thirty (30) days from the later of (a) Preliminary Approval Order; and (b) Defendant's receipt of the payee's name, address for payment, and Form W-9, Limited Run Games shall deposit the sum of Two Million Seven Hundred Twenty Thousand dollars ($2,720,000) into an account established and administered by the Settlement Administrator at a financial institution agreed upon by Class Counsel and Limited Run Games.

The Settlement Fund shall be used by the Settlement Administrator to pay for the following: (1) Approved Claims; (2) Notice and Administrative Expenses; (3) the Fee Award and Costs approved by the Court; (4) Taxes and Tax-Related Expenses; and (5) the Service Awards approved by the Court. *See* Reich Decl., Ex. G, ¶ 41.

### C. Prospective Relief

Upon entry of Final Judgment, Defendant shall not knowingly resume operation of the Meta Pixel or use the Tik Tok tracking technologies, Google tracking technologies, or X pixel, formerly known as Twitter, on any portion of the Limited Run Service accessible in the United States to disclose to third-parties the specific video content requested or obtained by a specific individual, unless and until the VPPA is amended, repealed, or otherwise invalidated (including by judicial decision), or without VPPA-compliant consent for the disclosure..

**D. Release**

In consideration of the Settlement benefits, Defendant and each of the "Limited Run Games Releasees" will receive a full release of all arising out of any facts, transactions, events, matters occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure, use, interception or transfer of information of or related to the Settlement Class Members through use of the Meta Pixel, or other pixels, cookies, or tracking or analytics tools on the Limited Run Game Service. *See* Reich Decl., Ex. G, ¶ 1.26.

**E. Notice and Administrative Expenses**

The Settlement Fund will be used to pay the cost of sending the Notice as required by the Court, as well as all other costs of administration of the Settlement Agreement. *See* Reich Decl., Ex. G, ¶ 1.24.

**F. Service Award**

In recognition of their efforts on behalf of the Settlement Class, the Parties have agreed that the Class Representatives may receive, subject to Court approval, Service Awards of up to $2,500 each from the Settlement Fund, as appropriate compensation for their time and effort serving as Class Representatives and Parties to this Action. *See* Reich Decl., Ex. G, ¶ 1.24.

**G. Attorneys' Fees, Costs, and Expenses**

Defendant has agreed that the Settlement Fund may also be used to pay proposed Class Counsel's reasonable attorneys' fees and to reimburse costs and expenses in this Action, in an amount to be approved by the Court. *See* Reich Decl., Ex. G, ¶ 1.24. Proposed Class Counsel has agreed – with no consideration from Defendant – to limit its petition to the Court for attorneys' fees to one-third of the Settlement Fund. *Id.* Defendant agreed not challenge or object to the amounts requested. Should the Court award less than the amount sought by Class Counsel, the

difference in the amount sought and the amount ultimately awarded shall remain in the Settlement Fund. *Id.*

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The approval of a proposed class action settlement is left to the discretion of the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

Preliminary approval, which is what Plaintiffs seek here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

When considering the fairness of a proposed settlement, courts must "expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses v. The New York Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023) (citing Fed. R. Civ. P. 23(e)(2)(C)-(D)). When evaluating the relief provided, "courts must 'tak[e] into account,' among other considerations, 'the terms of

any proposed award of attorney's fees,'" such that "'both the terms of the settlement and any fee award encompassed in a settlement agreement [is reviewed]' in tandem." *Id.* (citing Fed. R. Civ. P. 23(e)(2)(C)(iii)); *Fresno Cty. Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 72 (2d Cir. 2019)).

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). Although the Court's present task is to perform an "initial evaluation," *Newberg* § 11.25, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant(s) to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2). "There is

7

significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019).

## A.  The *Grinnell* Factors

### 1.  Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to class certification, summary judgment, or trial, Plaintiffs seek to avoid significant expense and delay and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Courts consistently have held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

Here, the Parties engaged in informal, pre-mediation discovery prior to reaching the Settlement, including on issues such as the capabilities and nature of the technology used on Defendant's Website and the size and scope of the putative class. Had no settlement been reached, the next steps in the litigation would have been contested motions to dismiss, motions for summary judgment and class certification, which would be, at minimum, costly and time-consuming for the Parties and the Court, and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. If Plaintiffs prevailed through all of that, the Parties would still have to litigate the case at trial and possible appeals.

Although Plaintiffs are confident in the strength of their claims, they nevertheless recognize that this Litigation is inherently risky. Claims applying the VPPA to operation of the Pixel are still relatively untested. Further, absent the instant Settlement, Plaintiffs would have to conduct additional formal discovery, which would involve the lengthy, costly, and uncertain process of obtaining relevant information from Defendant and pursuing subpoenas against third parties like Meta. Assuming Plaintiffs survived summary judgment, Plaintiffs would need to certify and maintain a class over Defendant's opposition. Plaintiffs would then need to prevail at trial and secure an affirmance on appeal before recovering damages. To the best of Settlement Class Counsel's knowledge, no VPPA case has gone to trial, and thus there is inherent risk in going to trial. Ultimately, continued litigation could add several more years before there is a resolution. Such risks support approval of this Settlement. The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. Consequently, this *Grinnell* factor plainly weighs in favor of preliminary approval of the Settlement.

### 2. The Reaction Of The Class (*Grinnell* Factor 2)

Since Notice of the Settlement has not yet been issued to the Class, it is not possible to gauge the reaction of the Class at this time. *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature."). Plaintiffs are unaware of any opposition to the present Settlement Agreement.

### 3. Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres v. Gristede's Oper. Corp.*, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that

they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176. Prior to reaching the Settlement, the Parties conducted informal discovery including on issues such as the nature and capabilities of the technology on Defendant's Website and the size and scope of the putative class. The Parties also discussed and debated the key facts, legal issues, litigation risks, and potential settlement structures. This information was sufficient for the Parties to assess the strengths and weakness of the claims and defenses and their relative negotiating positions.

Further, Class Counsel's experience in class action matters, as well as the other efforts made by counsel on both sides, confirms that the Parties are sufficiently well apprised of the facts of this Action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the proposed Settlement. This *Grinnell* factor thus also weighs in favor of preliminary approval.

### 4. Plaintiffs Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 And 5)

Although Plaintiffs' case is strong, it is not without risk. Defendant has made it clear that, if the Litigation continues, it will move for summary judgment on various issues, and vigorously contest the certification of a litigation class. In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d. at 177. In the context of this litigation, not only would Plaintiffs and the Class face risks in overcoming Defendant's motion practice, as well as certifying a class, but also further litigation will only delay relief to the Settlement Class Members. The Settlement alleviates these risks and provides a substantial benefit to the Settlement Class in a timely fashion.

These *Grinnell* factors thus favor preliminary approval.

### 5. Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present. The Court has not yet certified the proposed Settlement Class and the Parties anticipate that such a determination would be reached only after discovery is completed and exhaustive class certification briefing is filed. Defendant would argue that individual questions preclude class certification, and also that a class action is not a superior method to resolve Plaintiffs' claims. Should the Court certify the class, Defendant would also likely challenge certification through a Rule 23(f) petition, forcing additional rounds of briefing. Risk, expense, and delay permeate such a process. This factor weighs in favor of preliminary approval.

### 6. Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

Plaintiffs are unaware whether the Defendant could withstand a greater judgment. Nonetheless, a "'defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). Thus, at worst, this factor is neutral.

### 7. The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

"The determination of whether a settlement amount is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum . . . Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Esposito v. Nations Recovery Center, Inc.*, 2021 WL 2109077, at *5 (D. Conn. May 25, 2021)*. Because a settlement provides certain and immediate recovery, courts

11

often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. Per the Second Circuit in *Grinnell*, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

Applying these standards here, there is no question that this factor supports approval of the Settlement. The settlement payment in the amount of $2,720,000 will yield a significant benefit to each of the participating Class Members. The Settlement also requires business practice revisions that provide significant benefits to the Class Members.

Further, this Settlement aligns and compares favorably with the VPPA and wiretap settlements, as well as other privacy settlements, that came before it. *See, e.g., Moog Et Al V. The Christian Broadcasting Network, Inc.* No. 1:24cv501 ECF at 26. (E.D. Va. Jan. 29, 2025) (approving a four million dollar VPPA settlement); *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) (approving settlement in VPPA case that only provided *cy pres* relief with no monetary relief to Settlement Class Members); *In re Vizio, Inc., Consumer Privacy Litig.*, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%); *In re Google LLC Street View Elec. Commc'ns Litig.,* 2020 WL 1288377, at *11-14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.,* No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021) (dkts. 350, 369) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach); *Waller et al v. Times Publishing Co.,* No. 2023-027889-CA-01 (Fla. 17th Cir. Ct.) (approving settlement in VPPA case that provided for $950,000 common fund).

### B. The Proposed Class Should Be Certified for Settlement Purposes

The Court should certify the proposed Class for purposes of settlement under Rules 23(a) and (b)(3). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014). Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement only class certification motion is lessened—without a trial, case management issues need not be confronted. *Id.* In this Circuit, courts have found that "[i]n deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153, 158 (E.D.N.Y. 2009) (quoting *Steinberg v. Nationwide Mut. Ins*. Co., 224 F.R.D. 67, 72 (E.D.N.Y. Sept. 4, 2004)); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given liberal rather than restrictive

construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.).

Here, the proposed Settlement Class easily meets the requirements of Rules 23(a) and (b)(3), especially when considering the lower bar for certifying a settlement class.

### 1. The Settlement Class Meets the Requirements of Rule 23(a)

Rule 23(a) contains four prerequisites to class certification, each of which is satisfied here.

**Numerosity**: Rule 23(a)(1) requires a proposed class to be "so numerous that joinder of all members is impracticable." While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *In re Vizio,* 2019 WL 12966639, at *4 (VPPA case finding Rule 23(a)(1) is met); *see also Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the number of Class Members is in the hundreds of thousands and easily satisfies the numerosity requirement.

**Commonality:** Next, Rule 23(a)(2) provides for class certification only if "there are questions of law or fact common to the class." The threshold for meeting this prong is not high. Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *In re Vizio,* 2019 WL 12966639, at *4  (VPPA case finding Rule 23(a)(2) is met); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377 (per curiam). "Even a single common legal or

factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, Plaintiffs readily meet this standard, as many significant common questions of law and fact exist, including: (1) whether Defendant is a video tape service provider within the meaning of the VPPA; (2) whether the information Defendant allegedly disclosed to Meta constitutes PII under the VPPA; (3) whether Defendant knowingly disclosed Class Members' PII to Meta ; (4) whether Defendant gave notice to Class Members regarding the disclosure of such information; (5) whether Defendant obtained separate and district, informed, written consent consistent with the requirements of the VPPA from Class Members before disclosing their information to Meta; (6) whether Defendant's conduct violates the VPPA and applicable wiretapping laws; and (7) whether Class Members are entitled to damages, declaratory, and injunctive relief, and other remedies.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquiries is Defendant's alleged common course of conduct, *i.e.*, Defendant's alleged knowing disclosure of Class Members' PII through technology incorporated into its Website. Thus, commonality is satisfied.

**Typicality:** Rule 23(a)(3) requires "the claims or defenses of the representative parties" to be "typical of the claims or defenses of the class." The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.*, 126 F.3d at 376.

Here, Plaintiffs' claims stem from the same course of conduct and pattern of alleged wrongdoing as the claims of the Settlement Class Members. When a Class Member accessed video content on Defendant's Website, the Pixel allegedly caused the video content and a Class

15

Member's Facebook ID to be transmitted to Meta by the Class Member's web browsing device. Accordingly, the named Plaintiffs' claims are typical of the Class because they were subject to the same conduct as the other Class Members, and they are alleged to have suffered the same injury as a result.

**Adequacy:** Finally, Rule 23(a)(4)'s adequacy requirement is also met. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." In assessing the adequacy requirement, courts evaluate whether: (1) the class representatives have common interests (i.e. there is no conflict) with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Marisol A.*, 126 F.3d at 378. "[T]he requirement that the named plaintiffs adequately represent the class is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Robinson v. New York City Transit Auth.,* 2020 WL 5884055, at *13 (S.D.N.Y. Aug. 31, 2020), *report and recommendation adopted,* 2020 WL 5814189 (S.D.N.Y. Sept. 30, 2020) *quoting Marisol A.*, 126 F.3d at 378.

Here, the named Plaintiffs have common interests with the members of the Class in seeking fair, reasonable, and adequate compensation for Defendant's alleged violation of the VPPA and wiretapping laws. Indeed, the named Plaintiffs' distributions from the Settlement Fund will be calculated using the same methodology as the distributions to every other participating class member. Further, the named Plaintiffs have vigorously pursued and protected the interests of the Class in this case by, among other examples, maintaining, reviewing, and explaining relevant records probative of the Class claims, including records regarding their subscription to Defendant's Website and Facebook account information, seeking out and engaging highly qualified counsel, and negotiating a settlement that confers significant benefits to the Class. Additionally, neither

Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the Class.

Further, numerous other courts in this District have previously found that proposed Class Counsel adequately meet the obligations and responsibilities of class counsel. *See* Gucovschi Decl. Ex. A, Firm Resume of Gucovschi Rozenshteyn, PLLC ; Reich Decl. Ex.H, Firm Resume of Levi & Korsinsky LLP. This factor thus favors preliminary approval.

### 2. Common Questions of Law and Fact Predominate Under Rule 23(b)(3)

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance inquiry requires an analysis of whether there was a "unitary course of conduct," *Marisol A.,* 126 F.3d at 377. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. Feb. 28, 2003) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987)).

Here, common questions of the kind noted above predominate because there are few, if any, individualized factual issues, and because the core facts involve Defendant's uniform conduct that allegedly harmed all Class Members. Specifically, Plaintiffs allege that Defendant knowingly utilized the Meta Pixel to disclose Class Members' PII to third parties, and that this conduct uniformly injured Plaintiffs' and the other Class Members' legally protected interests under the VPPA and applicable wiretapping laws.

The superiority element of 23(b)(3) is also met here. A class action is the most efficient judicial avenue where, as here, Defendant's conduct affected hundreds of thousands of individuals in a uniform way. Other available methods, such as individual lawsuits or arbitrations, would be

highly inefficient. The parties and judicial system would need to duplicate efforts in such individual proceedings, some of which might be brought in separate venues at different times. "To satisfy the superiority requirement, the moving party must show that the class action presents 'economies of time, effort and expense, and promote[s] uniformity of decision.'" *Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *5 (S.D.N.Y. Jan. 15, 2025) (*quoting In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)). "The superiority requirement is designed to avoid 'repetitive litigation and possibility of inconsistent adjudications.'" *Id.* (collecting cases).

As the requirements of Rule 23(a) and (b) are satisfied, Plaintiffs ask that the Court (1) certify the Class for settlement purposes, (2) appoint the named Plaintiffs as class representatives, and (3) appoint Levi & Korsinsky LLP and Gucovschi Rozenshteyn, PLLC as Co-Class Counsel.

### C. The Court Should Approve the Form and Content of the Proposed Notice

If a settlement class is certified, Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Moreover, Rule 23(e)(2) requires the Court to "direct to class member the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The best practicable notice is that which is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed notice will primarily be accomplished by electronic means, such as email, and if needed, will be published on the Limited Run Games Website. Notice may also be sent by postcard to Settlement Class Members whose email addresses are invalid. *See* Reich Decl.,

Ex. G, ¶ 18. The proposed notice will include, in plain language, an explanation of the procedure to opt out of the Settlement or to object to the Settlement. *See* Reich Decl., Ex. G, ¶¶ 47, 48.

As such, the proposed notice before this Court fulfills each of these requirements.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the proposed settlement, (2) preliminarily certify the settlement class for settlement purposes only, (3) approve and authorize the distribution of the proposed notice to class members, (4) name Kroll, LLC as the Class Administrator, and (5) schedule a date and time for the Final Approval Hearing to consider approval of the settlement and request for specific class service awards and motion for approval of Plaintiffs' counsel's attorneys' fees and costs.

Dated: July 24, 2025                    Respectfully submitted,

By: */s/ Mark S. Reich*
Mark S. Reich (MR-4166)
Michael N. Pollack (6173272)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

Adrian Gucovschi
**GUCOVSCHI ROZENSHTEYN, PLLC**
140 Broadway Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Email: adrian@gr-firm.com

*Counsel for Plaintiffs*

19