# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| John Carbone and Ryan Adkins, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>   -v-<br><br>Limited Run Games, Inc.,<br><br>          Defendant. | 2:24-cv-08861<br>(NJC) (JMW) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

 Plaintiffs John Carbone and Ryan Adkins (collectively "Plaintiffs"), acting on behalf of themselves and other similarly situated people, bring claims against Defendant Limited Run Games, Inc. ("Limited Run Games" and collectively the "Parties") under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. (*See generally* ECF Nos. 1, 11.) Plaintiffs allege that Limited Run Games caused Plaintiffs' personally identifiable information ("PII") to be sent to Facebook and other third parties without Plaintiffs' knowledge or consent. (ECF No. 11 at ¶ 9.)

 Before me is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Motion"). (Mot., ECF No. 15.) On August 21, 2025, Magistrate Judge James M. Wicks issued a Report and Recommendation (the "R&R") recommending that I grant the Preliminary Approval Motion. (R&R, ECF No. 16.) For the reasons set forth below, I adopt the thorough and well-reasoned R&R in part and grant the

Preliminary Approval Motion, as modified by the parties' revised Exhibit C (ECF No. 18) and

Supplemental Letter Submission (ECF No. 19) (together, the "November 10, 2025 Supplemental

Submissions").

## BACKGROUND

On December 27, 2024, Carbone initiated this action under the Video Privacy Protection

Act, 18 U.S.C. § 2710. (ECF No. 1.) On May 7, 2025, Carbone filed an Amended Complaint,

naming Adkins as co-plaintiff. (ECF No. 11.) On June 20, 2025, Carbone and Adkins filed the

first iteration of their Unopposed Motion for Preliminary Approval of Class Action Settlement

(ECF No. 12), with attached exhibits consisting of a proposed claim form, proposed notices to be

sent by email and mail, a proposed notice for posting on a website, a proposed order granting

preliminary approval, a final judgment form, and a proposed Class Action Settlement

Agreement. (*See* ECF Nos. 12-3 through 12-10.) I referred the motion to Judge Wicks for a

written report and recommendation. (Elec. Order, June 24, 2025.)

On July 10, 2025, Judge Wicks issued an order identifying conflicting provisions within

the motion papers and directing the parties to meet, confer, and file a supplemental letter

resolving these conflicts. (Elec. Order, July 10, 2025.) On July 24, 2025, Carbone and Adkins

filed the revised Preliminary Approval Motion, along with all accompanying exhibits. (*See* ECF

Nos. 15, 15-3 through 15-10.)

On August 21, 2025, Judge Wicks issued a Report and Recommendation (the "R&R")

recommending that I grant the Preliminary Approval Motion and enter an order:

> A. finding, on a preliminary basis, that the settlement memorialized in the Agreement and
> filed with the Court falls within the range of reasonableness and meets the requirements
> for preliminary class settlement approval;

B. conditionally certifying, for settlement purposes only, the following Federal Rule of Civil Procedure 23 Class ("Class") described in the Agreement: All persons who accessed the Limited Run Game Service in the United States and watched a pre-recorded video or purchased a video game containing a "Cut Scene" between January 1, 2016 and June 20, 2025;

C. finding, on a preliminary basis for settlement purposes only, that the requirements of Federal Rule of Civil Procedure 23 are satisfied;

D. appointing named Plaintiffs, John Carbone and Ryan Adkins, for settlement purposes only, as Class Representatives;

E. appointing Gucovschi Rozenshteyn, PLLC and Levi & Korsinsky LLP, for settlement purposes only, as Class Counsel;

F. appointing Kroll LLC as Claims Administrator;

G. approving the proposed Notice for distribution to Class Members;

H. setting a September 18, 2025 deadline for Class Members to opt-out of the Settlement or to make objections to the Settlement; and

I. scheduling an in-person Final Approval Hearing at a time convenient for the Court to determine (a) whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be given final approval by the Court; (b) whether a judgment and order of dismissal with prejudice should be entered; (c) whether to approve the Fee Award to Class Counsel; and (d) whether to approve the payment of service awards to the Class Representatives.

(R&R at 30–31.) The R&R was electronically served on the parties on August 21, 2025, the same day it was issued. (*Id*. at 31; Elec. Order, Aug. 21, 2025.) The R&R instructed that any objections to the R&R must be submitted in writing to the Clerk of Court within fourteen (14) days of service, *i.e.*, by September 4, 2025. (R&R at 31.) No party submitted any objections.

On November 5, 2025, I held a conference regarding the Preliminary Approval Motion, addressing revisions to the proposed email, mail, and website notices for members of the

putative class (Exhibits B, C, and D to the proposed Settlement Agreement) needed to ensure proper notice and internal consistency between all three notices. (*See* Elec. Order, Nov. 5, 2025.) I also raised concerns about the scope of the release of claims set forth in the proposed Settlement Agreement. The parties agreed to implement the Court's revisions to the three proposed notices, to file a revised mail notice (Exhibit C), to meet and confer regarding the definition of "Released Claims" set forth in the proposed Settlement Agreement, and to file a joint submission addressing any further revisions to the release terms by November 10, 2025. The parties timely filed their supplemental submissions. (ECF Nos. 18–19.) These submissions adequately address the issues identified by the Court at the November 5, 2025 conference. (*See* Elec. Order, Nov. 14, 2025).

## DISCUSSION

In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If no objections are filed, a district court reviews a report and recommendation for clear error. *Nambiar v. Cent. Orthopedic Grp., LLP*, No. 24-1103, ___ F.4th ___, 2025 WL 3007285, at *2 (2d Cir. Oct. 28, 2025); *In re GEICO Customer Data Breach Litig.*, 691 F. Supp. 3d 624, 628 (E.D.N.Y. 2023) (citing *Galvez v. Aspen Corp.*, 967 F. Supp. 2d 615, 617 (E.D.N.Y. 2013)).

Because no objections were filed, I may review the R&R for clear error. *Nambiar*, 2025 WL 3007285, at *2. Nevertheless, I reviewed the R&R de novo out of an abundance of caution. Having reviewed the motion papers, the applicable law, and the R&R, I adopt the thorough and well-reasoned R&R (ECF No. 16) in part. As set forth above, at the November 5, 2025

4

conference, I identified several issues with the proposed notice exhibits and definition of "Released Claims" in the proposed Settlement Agreement and proposed certain clarifying edits. (*See* Elec. Order, Nov. 5, 2025.) The parties have since addressed those concerns to my satisfaction.

Accordingly, for all of the reasons set forth in the R&R and with the revisions to the proposed notice exhibits and release language, I preliminarily approve the parties' proposed Settlement Agreement (ECF No. 15-9), as revised in the manner set forth in the parties' November 10, 2025 Supplemental Submissions (ECF Nos. 18–19), because the proposed Settlement Agreement with these revisions is likely fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure and *Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023).

## CONCLUSION

For the reasons explained above, I adopt the thorough and well-reasoned R&R in part. Accordingly, I grant Carbone and Adkin's Preliminary Approval Motion as revised in the parties' November 10, 2025 Supplemental Submissions, and order the following:

1. I find, on a preliminary basis, that the proposed Settlement Agreement, as revised in the manner set forth in the parties' November 10, 2025 Supplemental Submissions, is fair, adequate, and falls within the range of reasonableness and meets the requirements for preliminary class settlement approval, including but not limited to those set forth in Rule 23 of the Federal Rules of Civil Procedure.

2. I conditionally certify, for settlement purposes only, the following Rule 23 Class

("Class") described in the proposed Settlement Agreement:

> All persons who accessed the Limited Run Game Service in the United States and watched a pre-recorded video or purchased a video game containing a "Cut Scene" between January 1, 2016 and June 20, 2025.

> Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over this action; (2) Limited Run Games, its subsidiaries, parent companies, successors, predecessors, and any entity in which Limited Run Games has a controlling interest and their current or former officers, directors, and employees; and (3) members of the Class who submit a valid request for exclusion prior to the opt-out deadline.

3. I find, on a preliminary basis and for settlement purposes only, that the requirements of Rule 23 are satisfied.

4. I appoint named Plaintiffs John Carbone and Ryan Adkins, for settlement purposes only, as Class Representatives.

5. I appoint Gucovschi Rozenshteyn, PLLC and Levi & Korsinsky LLP, for settlement purposes only, as Class Counsel.

6. I appoint Kroll LLC as the Settlement Administrator.

7. I approve the proposed Notice Plan for distribution to Class Members.

8. Class Counsel shall file a petition for attorney's fees and expenses and Class Representatives' incentive awards (collectively, the "Fee Petition") with the Court by **December 12, 2025**, which shall be posted to the settlement website by **December 15, 2025**. Defendant may, but is not required to, file a response to Class Counsel's Fee Petition by **January 2, 2026**. Class Counsel may file any reply in support of the Fee Petition by **January 16, 2026**.

9. All Class members who wish to receive benefits under the Settlement Agreement shall

complete and submit a timely Claim Form in accordance with the instructions contained therein. All Claim Forms must be postmarked or received by the Settlement Administrator by **January 20, 2026**.

10. Any Class member seeking to be excluded from the Settlement must do so by **January 20, 2026**, and must follow the procedures for seeking exclusion set forth in the Notice. Each request for exclusion must be submitted individually.

11. Any Class member who has not requested to be excluded may object to the fairness, reasonableness, or adequacy of the Settlement Agreement, to the entry of a Final Judgment dismissing the action with prejudice in accordance with the terms of the Settlement Agreement, to any award of attorney's fees and expense reimbursement sought by Class Counsel in the amounts specified in the Settlement Agreement, Notice, and any Fee Petition, and/or to the award of incentive payments to the two Class Representatives as set forth in the Notice and Settlement Agreement. Any such Class member seeking to object to the Settlement must do so by **January 20, 2026**, and must follow the objection procedures set forth in the Notice.

12. By **January 22, 2026**, any Class member who has not requested to be excluded from the Class may enter an appearance in the action, at their own expense, individually or through counsel of their own choice. Any Class member who does not enter an appearance will be represented by Class Counsel.

13. The parties shall file their Motion for Final Approval of the Settlement Agreement by **February 20, 2026.**

7

14. The parties shall appear for a Final Approval/Fairness Hearing on **March 3, 2026 at 1:00 PM** at the United States District Court for the Eastern District of New York, 100 Federal Plaza, Central Islip, New York, Courtroom 1040, to determine (a) whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be given final approval by the Court; (b) whether a judgment and order of dismissal with prejudice should be entered; (c) whether to approve the Fee Award to Class Counsel; and (d) whether to approve the payment of incentive awards to the Class Representatives.

Dated: Central Islip, New York

November 21, 2025

_/s Nusrat J. Choudhury_
NUSRAT J. CHOUDHURY
United States District Judge

8

**FILED
CLERK**

**8/21/2025**

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

JOHN CARBONE, RYAN ADKINS
*Individually and on behalf of all others similarly situated*,

                          *Plaintiffs*,

                  -against-


LIMITED RUN GAMES, INC.,

                          *Defendant.*

---------------------------------------------------------------X

                                                    **REPORT AND
                                                    RECOMMENDATION**
                                                    24-cv-08861 (NJC) (JMW)

**A P P E A R A N C E S:**

        Adrian Gucovschi
        **Gucovschi Rozenshteyn, PLLC**
        140 Broadway, Suite 4667
        New York, NY 10005
        *Attorneys for Plaintiff John Carbone*

        Michael Neal Pollack
        Mark S. Reich
        **Levi & Korsinsky LLP**
        33 Whitehall Street, 27th Floor
        New York, NY 10004
        *Attorneys for Plaintiffs*

        Stanton Ray Gallegos
        **Markowitz Herbold PC**
        1455 SW Broadway, Suite 1900
        Portland, OR 97201
        *Attorneys for Defendant*

**WICKS,** Magistrate Judge:

        Plaintiffs John Carbone ("Carbone") and Ryan Adkins ("Adkins, and collectively the

"Plaintiffs") on behalf of themselves and all others similarly situated, commenced this class

1

action against Defendant Limited Run Games, Inc. ("Defendant" or "Limited Run Games" and collectively the "Parties") alleging violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. (*See generally* ECF Nos. 1, 11.) Plaintiffs specifically allege that Defendant caused Plaintiffs' personally identifiable information ("PII") to be sent to Facebook and other third parties without Plaintiffs' knowledge or consent. (ECF No. 11 at ¶ 9.) Before the Court on referral from the Hon. Judge Nusrat J. Choudhury is Plaintiffs' unopposed Motion for Settlement Preliminary Approval (ECF Nos. 12, 15).[1] (*See* Electronic Order dated 6/24/25.) Plaintiffs ask the Court to enter an Order (i) preliminarily certifying the Settlement Class; (ii) preliminarily approving the terms of the Settlement between the parties as set forth in the Settlement Agreement; (iii) approving the notice form and notice method of the Settlement; and (iv) scheduling a final approval hearing date. (ECF No. 15.) Within the Motion, Plaintiffs further request that the Court certify the "Settlement Class", appoint Plaintiffs as Class Representatives, appoint Gucovschi Rozenshteyn, PLLC ("GR") and Levi & Korsinsky LLP ("Levi") as Co-Class Counsel, and authorize Kroll, LLC ("Kroll") as Settlement Administrator. (ECF No. 15-1 at 2.). For the reasons stated herein, it is respectfully recommended that Plaintiffs' Motion for Preliminary Settlement approval (ECF No. 15) be **GRANTED**.

## BACKGROUND

### I.    Factual History

Defendant owns and operates its online and mobile applications ("Apps"), including limitedrungames.com (the "Website"), where it sells and/or delivers audiovisual materials, such as video games containing cinematic cut scenes. (*See* ECF No. 11 at ¶ 1.) Plaintiffs purchased videos from Defendant's Website within the last two years of filing the Complaint. (*Id*. at ¶¶ 6-7.)

---

[1] As described below, the parties re-filed their Motion to clarify any inconsistencies within the papers. As such, the operative Motion is found at ECF No. 15 rather than the Motion at ECF No. 12.

Defendant caused Plaintiffs video game purchases to be sent along with Plaintiffs' personally identifiable information ("PII") to Facebook and upon information and belief, other third parties, without Plaintiffs' knowledge, agreement, or consent each time Plaintiffs requested and viewed video content and video games sold throughout the Website. (*Id*. at ¶¶ 9-10.)

The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." (*Id*. at ¶ 14.) The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." (*Id*.) A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." (*Id*.) Defendant's consumers include those who

> (a) purchased video games; and/or (b) other merchandise from Defendant; and/or (c) watched prerecord videos on Defendant's Website; and/or (d) subscribed to Defendant's Website by at a minimum, providing their IP address and email address; and/or (e) created an account of Defendant's Website by at a minimum providing their IP address, email address and name.

(*Id*. at ¶ 23.)

Defendant "purposely installed and implemented" tracking technologies that it used to transmit its customers' Personal Viewing Information to unauthorized parties, including Facebook. (*Id*. at ¶ 24.) Defendant's knowledge as to its conduct is evidenced by the fact that it chose to track its customers' interactions with the Website and Apps using Facebook Pixel, which tracked, recorded, and sent Facebook its customers' Website activity. (*Id*. at ¶¶ 26, 29.) Plaintiffs continue to assert their unawareness and non-consent of Defendant's tracking and transmissions of their video viewing or video game purchase history to third parties. (*Id*. at ¶¶ 35, 38.) Plaintiffs brought this action on behalf of themselves and all other similarly situated persons

pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). (*Id*. at ¶ 40.) Plaintiffs seek declaratory relief, statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c), and reasonable attorneys' fees and costs. (*Id*. at ¶ 57.)

## II.    <u>Procedural History</u>

On December 27, 2024, Carbone, on behalf of himself and all others similarly situated, commenced this class action. (ECF No. 1.) The Initial Conference was converted to a Status Conference in light of the parties' representation that the partis were engaged in mediation. (ECF No. 8; Electronic Order dated 2/22/25.) On April 30, 2025, the parties as directed filed a Joint Status Report, in which the parties informed the Court they have reached a settlement in principle. (ECF No. 10.) Thereafter, the Court ordered that any amended complaint to incorporate additional claimants who participated in the mediation and have agreed to join the action shall be filed by May 8, 2025. (Electronic Order dated 5/1/25.) Additionally, the Court directed the parties to file a joint motion for preliminary settlement approval by June 20, 2025. (*Id*.) On May 7, 2025, Plaintiffs filed the Amended Complaint, which in Adkins was now a named plaintiff. (ECF No. 11.) On June 20, 2025, Plaintiffs filed the instant motion. (ECF No. 12.) On June 24, 2025, the motion was referred by Judge Choudhury to the undersigned. (Electronic Order dated 6/24/2025.) Upon review, the undersigned directed Plaintiffs to file a supplemental letter by July 17, 2025 to clarify the perceived conflicting provisions in the Settlement Agreement and moving papers, which they did. (ECF No. 13; Electronic Order dated 7/10/25.) The parties further re-filed the motion papers to align with the supplemental letter. (ECF No. 15.)

## THE PROPOSED SETTLEMENT

The total settlement fund amount is $2,720,000 ("Settlement Fund"). (ECF No. 15-9 at §
1.34.) Within 30 days of the entry of this Order, Defendant will deposit this amount into an
account established and administered by Kroll at a financial institution agreed upon by Class
Counsel and Defendant. (ECF Nos. 15-1 at 3; 13 at 1.) The Settlement Fund shall be used by
Kroll to pay for the following: (1) Approved Claims; (2) Notice and Administrative Expenses;
(3) the Fee Award and Costs approved by the Court; (4) Taxes and Tax-Related Expenses; and (5)
the Service Awards approved by the Court. (ECF No. 15-9 at § 1.34.)

The Settlement Class is comprised of Defendant's consumers identified in the Settlement
Class List generated by Defendant, which will be provided no later than fourteen days after this
Order. (ECF No. 15-1 at 12.) The Class is defined as "all persons, even those who did not have a
Facebook account, … who accessed the Limited Run Game Service in the United States and
watched a pre-recorded video or purchased a video game containing a Cut Scene between
January 1, 2016 to June 20, 2025." (ECF No. 13 at 1.)  The Class exclusions include: (i) the
Judges of this matter, their staff or families; (ii) Defendant "its subsidiaries, parent companies,
successors, predecessors, and any entity in which the [Defendant] has a controlling interest and
their current or former officers, directors, and employees"; and (iii) any class member who
submits to be excluded prior to the opt-out deadline. (*Id.*)

Upon entry of the final judgment, Defendant agrees to not use the Meta Pixel on its
Website and/or Apps to disclose to Meta the specific video content requested or obtained by a
specific individual until such time as the VPPA is abolished, amended, or otherwise declared
unconstitutional. (*See* ECF No. 15-9 at § 2.2.) To those class members that agree to the
settlement, Defendant and the "Releasees" as defined in sections 1.26-28 of the Settlement

Agreement will be provided with a full release of claims pertaining to the "alleged disclosure …
through use of the Meta Pixel … on [Defendant's] Website." (ECF No. 15-1 at 5.) The
Settlement Fund will pay for the costs of sending the notices and any other costs associated with
Kroll's administration of the Settlement Agreement. (*Id.* at 5.) The Agreement also includes that
the parties agreed that the Class Representatives upon approval may receive up to $2,500 each as
service awards. (*Id.*) Lastly, upon agreement, Class Counsel may receive one-third of the
Settlement Fund, which includes attorneys' fees as well as any costs or expenses incurred within
this action. (*Id.*) Defendant further agrees not to challenge this amount. (*Id.*)

## DISCUSSION

Plaintiffs seek class certification for settlement purposes pursuant to Rules 23(a) and
23(b)(3). (ECF No. 15-1 at 13.) Plaintiffs' request includes an Order to preliminarily approve the
Settlement, appoint Plaintiffs as Class Representatives, appoint GR and Levi as Co-Class
Counsel, direct notice to the Settlement Class, approve the form and manner thereof, authorize
Kroll as Class Administrator and schedule a final approval hearing. (ECF No. 15-1 at 2, 19.)
Each request is addressed accordingly.

### A. Conditional Class Certification

"Before certifying a class, a district court must determine that the party seeking
certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality,
typicality, and adequacy of representation." *Abarza v. Spirit Pharms. LLC*, No. 23-CV-03637
(JMW), 2025 WL 1519147, at *3 (E.D.N.Y. May 28, 2025) (quoting *Marisol A. v. Giuliani*, 126
F.3d 372, 375 (2d Cir. 1997)). Additionally, where, as here, a plaintiff moves to certify the class
pursuant to Rule 23(b)(3), plaintiff is also required to show that "questions of law or fact
common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Glatt v. Fox Searchlight Pictures, Inc*., 811 F.3d 528, 538 (2d Cir. 2016) (quoting Fed. R. Civ. P. 23(b)(3)). This is satisfied if the resolution of the legal and factual questions of each class member's case can be achieved through generalized proof, and those issues are more substantial than the issues which are subject to individualized proof. *Id*.

Moreover, the Second Circuit has also recognized an implicit requirement of "ascertainability" within Rule 23(a). *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) ("The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries."). Rule 23(a) "does not set forth a mere pleading standard," but instead requires that the proponent of certification "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

The requirements for Rule 23 class certification are subject to a rigorous analysis and must be established by a preponderance of the evidence. *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *5 (E.D.N.Y. Apr. 2, 2012). Any factual disputes relevant to the Rule 23 requirements must be resolved and any doubts should be resolved in favor of certification. *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323 (ALC)(AJP), 2013 WL 1040052, at *10 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12-CV-6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013). At bottom, the District Court has "substantial discretion in determining whether to certify a class." *Id.* For purposes of settlement, Defendant does not oppose this conditional certification.

### i. *Rule 23(a)(1): Numerosity*

The numerosity prong of Rule 23(a) requires that individuals in the proposed class be so numerous that joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  In the Second Circuit, numerosity is presumed when the proposed class is greater than or equal to forty members. *Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 95 (E.D.N.Y. 2015); *see also Newman v. Bayer Corp.*, 348 F.R.D. 567, 578 (S.D.N.Y. 2025) (same).  This presumption, however, "does not provide rigid parameters, and the ultimate issue is whether the class is too large to make joinder practicable."  *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 269 F.R.D. 252, 255 (S.D.N.Y. 2010) (internal quotation marks and footnote omitted); *see Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers.") (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)).  Thus, in considering the practicability of joinder, courts focus on the factors articulated by the Second Circuit in *Robidoux*:

> (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members.

*Robidoux*, 987 F.2d at 936.

Here, the class includes all persons who accessed the Limited Run Games services and watched a pre-recorded video or purchased a video game containing a "Cut Scene" between January 1, 2016, and June 20, 2025. (ECF No. 15-2 at ¶ 19.) The estimated number of Class Members is in the hundreds of thousands. (ECF No. 15-1 at p. 14.) Therefore, the numerosity requirement is easily satisfied.

ii.    *Rule 23(a)(2) and (3): Commonality/Typicality*

"The commonality and typicality requirements tend to merge into a single inquiry." *Avila*, 2022 WL 3370024 at *3 (quotes omitted); *Marisol A*, 126 F.3d at 376 ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)"). Rule 23(a)(2) requires a plaintiff to show "questions of law or fact common to the class" and Rule 23(a)(3) requires that plaintiff's claims "are typical of the claims. . . of the class." *Avila v. Ardian Corp.*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *3 (E.D.N.Y. Aug. 16, 2022); Fed. R. Civ. P. 23(a)(2)-(3). This can be "easily satisfied" by a single common issue. (*Avila*, 2022 WL 3370024 at *3; *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *6 (E.D.N.Y. Mar. 28, 2022) ("Even a single common question will suffice") (quotes omitted). Critically, a plaintiff must demonstrate the proposed class has suffered the same injury. *Avila*, 2022 WL 3370024 at *3.

> Typicality, which requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class[.] Fed. R. Civ. P. 23(a)(3), allows courts to consider whether a putative class representative is subject to unique defenses which threaten to become the focus of the litigation[.]

*Cheng v. HSBC Bank USA, N.A.*, No. 23-7383, 2024 WL 4835268, at *1 (2d Cir. Nov. 20, 2024) (internal citations and quotations omitted).

Plaintiffs assert that commonality is readily met because many significant common questions of law and fact exist, including:

> (1) whether Defendant is a video tape service provider within the meaning of the VPPA; (2) whether the information Defendant allegedly disclosed to Meta constitutes PII under the VPPA; (3) whether Defendant knowingly disclosed Class Members' PII to Meta; (4) whether Defendant gave notice to Class Members regarding the disclosure of such information; (5) whether Defendant obtained informed, written consent consistent with the requirements of the VPPA from Class Members before disclosing their information to Meta; (6) whether Defendant's conduct violates the VPPA and applicable wiretapping laws; and (7) whether Class Members are entitled to damages, declaratory, and injunctive relief, and other remedies.

(ECF No. 15-1 at 15.)

Here, all class members have common questions directed at the alleged misconduct from Defendant. "[W]hether members of the proposed class sustained damages as a result of the alleged misconduct" is a common issue of fact to all class members. *In re Didi Global Inc. Sec. Litig.*, No. 21-CV-5807 (LAK) (VF), 2025 WL 1909295, at *9 (S.D.N.Y. July 7, 2025); *see In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *5 (S.D.N.Y. June 8, 2022) (finding common questions of law and fact between the class members as each member was a card holder whose card information was subject to a data breach.) Additionally, all claims are pursuant to the same statute – VPPA 18 U.S.C. § 2710. *See In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 164 (S.D.N.Y. 2007) (quoting *In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (satisfying the commonality requirement because "[p]laintiffs are suing under the same federal securities laws" and "the success of each plaintiff's claim turns on establishing the existence, nature and significance of the same alleged misrepresentations and omissions")).

It therefore follows that typicality is also met because Plaintiffs' claims stem from the same course of conduct as the Settlement Class Members' claims – that Defendant knowingly disclosed consumer's PII through technology that Defendant intentionally incorporated into its Website. (ECF No. 15-1 at 14-16.) *See In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45–46 (S.D.N.Y. 2013) (quoting *Robidoux*, 987 F.2d at 936–37) ("[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.") Therefore, commonality and typicality are both satisfied.

### iii.    *Rule 23(a)(4): Adequacy of Representation*

"Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007); *Cheng*, 2024 WL 4835268, at *1 (internal citations omitted) ("The test for adequacy, … is twofold: 'the proposed class representative [1] must have an interest in vigorously pursuing the claims of the class, and [2] must have no interests antagonistic to the interests of other class members.'")

As typicality is established, Plaintiffs may be appointed as representatives for the Class. Plaintiffs' interest – seeking relief for the alleged misconduct resulting in distribution of their private information – mirrors that of the proposed class. *See In re Morgan Stanley Data Sec. Litig.*, No. 20-CV-05914 (PAE), 2022 WL 3141297, at *2 (S.D.N.Y. Aug. 5, 2022) (satisfying adequacy element because Plaintiffs' interests were not conflicting and were co-extensive with all other claims from an identical data breach); *see also Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 136 (E.D.N.Y. 2020) (adequacy prerequisite is met because "the remedies that Plaintiffs seek would provide the same relief to each member of the proposed classes.") Plaintiffs assert that they have "vigorously pursued and protected the interest of the Class" and do not "have any interest adverse to, or in conflict with, the interests of the Class." (ECF No. 15-1 at 16-17.) *See Amigon v. Safeway Constr. Enters., LLC*, No. 20-CV-5222 (PK), 2024 WL 5040436, at *4 (E.D.N.Y. Dec. 9, 2024) (approving Plaintiff as class representative as there was no indiciation that his interests were antagonistic to other class members)).

Next as to Class Counsel, Plaintiffs contend that Levi and GR have "significant experience in litigating class actions of similar size, scope, and complexity to this instant

Action". (ECF Nos. 15-2 at ¶ 27; 15-11 at ¶ 12.) Over the last several years, Levi has been lead or co-lead counsel in over 50 class actions pertaining to securities, corporate governance, and consumer litigation (*See generally*, ECF No. 15-10.) Levi has proven its ability to hold executives and board members accountable for various abuses and misconduct as well as provide relief to consumers who have been aggrieved by deception business practices, data breaches, and privacy right violations. (*Id*. at 12, 19.) Mark S. Reich, partner of Levi and attorney for Plaintiffs to this action, has 15 years of experience practicing at the largest class action firm in the country before joining Levi. (*Id*. at 46.)  Reich is admitted to the New York State Bar, the United States District Courts for the Eastern, Southern, and Northern Districts of New York, and the United States District Court for the Eastern District of Michigan. (*Id*. at 48.) He has been consistently named a New York Metro Super Lawyer since 2013. (*Id*.)

The GR firm has been appointed class counsel on behalf of numerous nationwide and multistate class actions. (ECF No. 15-15 at 2-3.) GR has been recognized as "qualified" and "experienced." (*Id*. at 2.) Adrian Gucovschi, founding partner of GR and attorney to this action, is admitted in the states of New York and California, as well as the United States District Courts for the Southern and Eastern Districts of New York. (*Id*. at 3.)

It is clear that Levi and GR Firms' class action experience more than qualifies them to be adequate class counsel. *See In re Waste Mgmt. Sec. Litig.*, No. 22-CV-4838 (LGS), 2025 WL 958467, at *14 (S.D.N.Y. Mar. 31, 2025) (appointing class counsel based upon counsel's extensive experience). Because of counsel's experience with class actions, the adequacy requirement is met. *See Glick v. Arqit Quantum Inc.*, 666 F. Supp. 3d 222, 231 (E.D.N.Y. 2023) (adequacy requirement has been met because counsel has "substantial experience litigating securities fraud cases and serving as lead counsel.")

### iv.   Ascertainability

"The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 269. What the ascertainability requirement does not require is a showing of administrative feasibility at the class certification stage. *Id.* at 265. Here, the proposed class is clearly ascertainable as it can be defined with objective criteria. That is, the class will consist of individuals "who accessed the Limited Run Games services and watched a pre-recorded video or purchased a video game containing a Cut Scene between January 1, 2016 and June 20, 2025." (ECF No. 15-2 at ¶ 19.) Thus, Plaintiffs have satisfied the requirement of ascertainability. In sum, Plaintiffs have satisfied the requirements of Rule 23(a).

### v.   Rule 23(b)(3): Predominance and Superiority

Plaintiffs must also demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3); *see Avila*, 2022 WL 3370024, at *4.

### a.   Predominance

Generally, the predominance requirement is satisfied where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Waste Mgmt. Sec. Litig.*, 2025 WL 958467, at *3 (quoting *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020)). The focus is on whether there are questions of liability common to the class members. *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 WL 170049, at *12 (E.D.N.Y. 2012). "[A] Court

13

must consider the elements of each cause of action, and determine whether those elements can be satisfied by common, class-wide proof." *Newton v. R.C. Bigelow, Inc*., No. 22-CV-5660 (LDH)(SIL), 2025 WL 994721, at *8 (E.D.N.Y. Feb. 14, 2025), *report and recommendation adopted*, No. 22-CV-5660 (LDH) (SIL), 2025 WL 965690 (E.D.N.Y. Mar. 31, 2025) (quoting *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011)).

The Complaint alleges Defendant is a "video tape service provider" covered by the VPPA and Defendant intentionally disclosed their consumers' PII without informed, written consent or agreement to third parties in violation of the VPPA. (*See generally* ECF No. 1.) Class Members all contributed a bare minimum requirement of personal information to Defendant that was then disclosed to third parties, which include the consumers' "first and last name, IP address and email address." (ECF No. 1. at ¶ 51(b).) Despite the time that the consumers spent viewing information may vary, depending on how often they requested or purchased a video, individualized damages alone do not alter the predominance requirement. *See B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-02738 (MKB) (JO), 2021 WL 234550, at *21 (E.D.N.Y. Jan. 19, 2021) ("[C]ommon issues predominate when liability is determinable on a case-wide basis, even where class members have individualized damages.")

The few, if any, individualized factual issues amongst different Class Members do not have any weight on the Defendant's alleged liability for disclosing PII without informed, written consent. (*See* ECF No. 15-1 at 17.) *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 462 (S.D.N.Y. 2018) ("The inquiry is inherently comparative, taking into account the weight and significance of common and individual issues rather than simply their numbers.") The questions of law and fact that are common to the Settlement Class predominate over any individual questions and can be answered with the same evidence. *See Braun v.*

14

*Philadelphia Inquirer, LLC*, No. 22-CV-4185-JMY, 2025 WL 1314089, at *6 (E.D. Pa. May 6, 2025) ("The questions of law and fact … can be answered with the same evidence: evidence of Defendant's installation of the Meta Pixel on its website; evidence as to what information, if any, Meta received from Defendant via the Meta Pixel; and whether Settlement Class members were notified of and/or given enough information to consent to the disclosure of their information to Meta when they opened a digital subscription with Defendant.") For these reasons, the predominance requirement is met.

### b. Superiority

"The superiority requirement is satisfied where a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB) (SMG), 2020 WL 8642081, at *4 (E.D.N.Y. Oct. 8, 2020), *report and recommendation adopted*, No. 18-CV-885 (FB) (LB), 2021 WL 722412 (E.D.N.Y. Feb. 24, 2021) (quotes omitted). Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). A class action is superior where they "facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13-CV-2541 (KNF), 2014 WL 1378922, at *6 (S.D.N.Y. 2014).

Here, a class action would be superior to any other available method for fairly

and efficiently adjudicating this controversy. The expense of litigation and the size of numerous individual claims proceeding as a class action here would be "more economically sensible." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 177 (S.D.N.Y. 2014). Plaintiff's motion addresses this argument, stating that "other available methods, such as individual lawsuits or arbitrations, would be highly inefficient." (ECF No. 15-1 at 17-18.) "The superiority requirement is designed to avoid 'repetitious litigation and possibility of inconsistent adjudications.'" *Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *5 (S.D.N.Y. Jan. 15, 2025) (citations omitted). Because there are hundreds of thousands of possible actions, that could be brought at different times in different venues, the superiority requirement is met.

Accordingly, because predominance and superiority have been met, the requirements under Rule 23(b)(3) have been satisfied and the Class should be preliminarily certified.

**B. <u>Preliminary Approval of the Class Settlement</u>**

Preliminary approval is the first step in the settlement of a class action. *Abarza*, 2025 WL 1519147, at *7 (citing *Lizondro-Garcia*, 300 F.R.D. at 179). If approved, plaintiffs next provide notice of a hearing where class members and settling parties are provided an opportunity to be heard concerning final court approval. *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 798 (S.D.N.Y. 2020).

At this preliminary stage, the court is only tasked with evaluating the settlement for fairness, adequacy, and reasonableness, and to ensure the agreement is not a product of collusion. *Lora v. To-Rise, LLC*, 452 F. Supp. 3d 5, 7 (E.D.N.Y. 2019). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (quoting *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir.1980)).

16

The legal standard for preliminary approval was aptly described as follows,

> [w]here parties seek to settle claims brought by a plaintiff on behalf of a proposed class, the court must review the proposed class action settlement to ensure it is fair, reasonable, and adequate. Courts apply a three-step process of review. The court first conducts a preliminary evaluation of the fairness of the proposed settlement agreement to determine whether to give notice of the proposal to all class members. The second step consists of providing notice of a hearing ... to class members and holding a hearing to ensure that class members and settling parties are provided the opportunity to be heard[.] The court turns to the third step—final approval—only if the Court has granted preliminary approval and afforded notice of the hearing and an opportunity to be heard to all class members.

*C.K. through his next friend P.K. et al. v. McDonald et al.*, No. 22-CV-1791 (NJC) (JMW), 2025 WL 2388687, at *6 (E.D.N.Y. Aug. 18, 2025) (internal citations and quotations omitted).

Rule 23(e)(2), as *amended* in 2018, provides certain factors for the court to consider upon preliminary approval. Specifically, whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length

(C) The relief provided for the class is adequate, taking into account

    (i)    The costs, risks, and delay of trial and appeal;

    (ii)    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    The terms of any proposed award of attorney's fees, including timing of payment

    (iv)    Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendment, Rule 23(e)(2) the Second Circuit examined "the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see City of Detroit v. Grinnell*

17

*Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

The *Grinnell* factors include:

(1) The complexity, expense and likely duration of the litigation;

(2) The reaction of the class to the settlement;

(3) The stage of the proceeding and the amount of discovery completed;

(4) The risks of establishing liability;

(5) The risks of establishing damages;

(6) The risks of maintaining a class action through the trial;

(7) The ability of the defendants to withstand a greater judgment;

(8) The range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* The "Rule 23(e) factors [] add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Indeed, there is significant overlap between the two sets of factors. *Id.* Both sets of factors are considered below.

### i.    *Adequate Representation by Class Representative and Class Counsel*

As set forth above, Plaintiffs and the proposed Class Counsel are adequate representation for the Class. *See supra*, Section A, iii. Here, Plaintiff's interest is adequately aligned with the Class Members and proposed Co- Counsel, Levi and GR are sufficiently experienced and qualified to represent the class. *Id.* This factor, therefore, weighs in favor of granting preliminary approval. *See Buchanan*, 2020 WL 8642081 at *6.

### ii.   *Arms-Length Negotiations After Meaningful Discovery*

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116. This factor addresses the same substance as *Grinnell* Factor 3 (the stage of the proceedings and the amount of discovery completed).

Here, the parties "conducted informal discovery including on issues such as the nature and capabilities of the technology on Defendant's Website and the size and scope of the putative class." (ECF No. 15-1 at 10.) The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)) (internal quotation marks omitted). "The Parties also discussed and debated the key facts, legal issues, litigation risks, and potential settlement structures. This information was sufficient for the Parties to assess the strengths and weakness of the claims and defenses and their relative negotiating positions." (ECF No. 15-1 at 10.)

Therefore, this factor weighs in factor in granting preliminary approval.

### iii.   *Adequate Relief for the Class*

The Court is required to consider whether the settlement provides adequate relief to the putative class. *See* Fed. R. Civ. P. 23(3)(2)(C). This includes a consideration of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class ...; (iii) the terms of any proposed award of attorney's fees ...; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.*

### a. *Costs, Risks, and Delay of Trial and Appeal*

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability (*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of maintaining the class through trial (*Grinnell* Factor 6). *See Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *5 (E.D.N.Y. 2021) (quoting *In re Payment Card*, 330 F.R.D. at 36.) "Class action suits have a well-deserved reputation as being most complex." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *5 (E.D.N.Y. 2021). This case is no exception.

Here, although the parties completed informal discovery during the negotiations process, it is quite clear that if this case proceeds, it would result in significant additional expenses and delay. As Plaintiffs argue, continued litigation would result in "additional formal discovery, which would involve the lengthy, costly, and uncertain process of obtaining relevant information from Defendant and pursuing subpoenas against third parties like Meta." (ECF No. 15-1 at 9.)

Further, there are significant risks in continuing litigation. (*Id.*) Plaintiffs would need to certify and maintain a class over Defendant's opposition and survive a trial in which the VPPA, which to Counsel's knowledge has never been a subject of a trial. (*Id.*) Given the above-mentioned risks, costs, and delay of trial and possible appeal would be significant, this factor to weigh in favor of preliminary approval. *See Rosenfeld*, 2021 WL 508339 at *5.

### b. *Effectiveness of the Proposed Method of Distributing Relief to the Class*

An adequate distribution method is one that can "deter or defeat unjustified claims" without imposing an undue demand on class members. *Id.* (citing Fed. R. Civ. P. 23 advisory

committee's note to 2018 amendment). The method does not need to be perfect, it just needs to have a reasonable, rational basis, especially when recommended by experienced counsel. *Id.*

Here, Plaintiffs ask the court to authorize the retention of Kroll as Class Administrator, who will then be directed to publish the Notice and Claim Form and send direct notice via email in accordance with the Notice Plan on the Settlement Agreement. (ECF 15-9 at § 4.1.1.) The Notice Plan provides proper measures of correcting any issues that may occur, advises Class Members of their rights, and answers any questions Class Members may have. (*Id.* at §§ 4.1.1, 4.1.4, 4.2.) All cash payments issued to the Settlement Class Members will state on the face of the check that they will expire and become null and void after one hundred eighty (180) days after the date of issuance. (*Id.* at § 2.) Kroll will also have the responsibility of processing the payment of Approved Claims to the Settlement Class (*Id.* at § 1.30.)

Thus, this factor weighs in favor of preliminary approval.

### c. *Terms of Any Proposed Attorney's Fees*

The Settlement Agreement states that Class Counsel shall be entitled to an award of reasonable attorneys' fees determined by the Court limited to no more than one-third (33.33%) of the Settlement Fund ($906,666.00). (ECF No. 15-9 at § 8.) Additionally, the Court may award less than this amount, and the difference will remain in the Settlement Fund. (*Id.*) "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Rosenfeld*, 2021 WL 508339 at *6 (quotes omitted) (collecting cases); *Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203 (AKT), 2018 WL 4861391, at *2 (E.D.N.Y. 2018); *Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) ("Class Counsel's request for one-third of the Fund is reasonable

and 'consistent with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *26 (S.D.N.Y. 2013).

Here, Plaintiffs' proposed request for attorneys' fees totaling one-third of the Settlement Amount is well within the range of reasonableness. *Buchanan*, 2020 WL 8642081 at *8. Therefore, the undersigned finds this factor weighs in favor of approval.

### d.   Any Agreement Required to be Identified under Rule 23(e)(3)

This factor requires the Court to consider any agreements made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(3). According to the Settlement Agreement, the parties have agreed that the Class Representatives may receive, subject to Court approval, Service Awards of up to $2,500 each from the Settlement Fund, as appropriate compensation for their time and effort to this Action. (ECF No. 15-9 at § 8.3.) With two Class Representatives, John Carbone and Ryan Adkins, this total amount of $5,000 taken from the $2,720,000 Settlement Fund is more than reasonable. Service payments have routinely been awarded to named plaintiffs. *See e.g., Campbell v. Bukhari Grp. LLC*, No. 22-CV-2813 (PK), 2025 WL 1874485, at *13 (E.D.N.Y. July 8, 2025) (preliminary approving service award) ("Courts routinely grant requests for service awards in federal class actions"); *Buchanan*, 2020 WL 8642081, at *8 ("'incentive' or 'service'" award[s] [are] not uncommon in class action cases and [are] 'meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit'") *Cohan*, 2018 WL 4861391, at *6 ("Service awards are common in class action cases"); *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at *16 (E.D.N.Y. Jan. 4, 2024) ("Incentive awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred

by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs"). And, at this stage, the instant motion remains unopposed.

As it relates to the Settlement Agreement's release provisions, "[a] settlement cannot be fair, reasonable and adequate if the Class-wide release is overbroad." *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117 (LTS) (BCM), 2017 WL 5956907, at *14 (S.D.N.Y. 2017), *report and recommendation adopted*, No. 14 CV 7117 (LTS) (BCM), 2017 WL 5956770 (S.D.N.Y. 2017). The Settlement Agreement provides that each Class Member agrees to release the Releasees "of all arising out of any facts, transactions, events, matters occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure, use, interception or transfer of information of or related to the Settlement Class Members through use of the Meta Pixel, or other pixels, cookies, or tracking or analytics tools on the Limited Run Game Service." (ECF No. 15-1 at 5.) This release language is directed at the conduct that occurred with disclosure of the members' PII and as such, is limited to those claims. Therefore, it is not overbroad.

Accordingly, the Court finds this factor weighs in favor of approval.

### iv.    *Equitable Treatment of Class Members Relative to One Another*

This factor calls the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  In other words, "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

23

Here, each Settlement Class Member with an Approved Claim shall be entitled to a *pro rata* portion of the Settlement Fund, after first deducting any necessary settlement administration expenses. (ECF No. 15-9 at § 2.1.)  Although some Class Members may have a greater extent of purchase history linked to their profile, all Class Members had an equal alleged injury of their PII disclosed to third parties. Therefore, a *pro rata* distribution share is equitable to all Class Members relative to one another. *See Meredith Corp v. SESAC, LLC*, 87 F.Supp.3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably… and has the benefit of simplicity"). Further the scope of the release applies uniformly to all putative class members. *See In re Payment Card*, 330 F.R.D. at 47 (approving *pro rata* share distribution structure).

Therefore, this factor weighs in favor of approval.

### v.    *Ability of Defendants to Withstand Greater Judgment*

This is *Grinnell* Factor 7, which "does not fit neatly within any of the factors enumerated in Rule 23(e)(2)(C) but adds value to the Court's analysis." *Id.*  The idea underlying this factor is that if a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate.  *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *8 (S.D.N.Y. Oct. 21, 2022). Plaintiffs contend that they are "unaware whether the Defendant could withstand a greater judgment." (ECF No. 15-1 at 11.) As mentioned, the Parties have agreed to settle for $2,720,000.00. Although the agreed upon payment is relatively large, it is less so when considering the size of the Settlement Class. Therefore, this factor is neutral. *See id*. However, as Plaintiffs point out, "a defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012).

###### vi.    *Reaction of the Class*

At the preliminary approval stage, *Grinnell* Factor 2 is limited at best.  *See In re Payment Card*, 330 F.R.D. at 29.  Where, as here, Class Members have not yet received notice of the settlement, Courts have found it too early to evaluate this *Grinnell* factor.  *See Rosenfeld*, 2021 WL 508339 at n. 2 ("One of the *Grinnell* factors, the class's reaction to the proposed settlement, cannot be considered until after notice has been provided to the class.  Accordingly, the court does not consider that factor at this stage of the proceedings"); *Chang v. Philips Bryant Park LLC*, No. 17 CIV. 8816 (LTS) (SLC), 2019 WL 8105999, at *8 (S.D.N.Y. Oct. 23, 2019), *report and recommendation adopted*, No. 17-CV-8816 (LTS)(SLC), 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020) ("Because the Class Members have not yet received notice of the settlement, it remains too early to evaluate the second Grinnell factor").

If preliminary approval is granted, this factor should be analyzed upon sufficient evidence presented by the parties at the final approval stage.  *See Chang*, 2019 WL 8105999 at *8.

###### vii.    *Reasonableness of the Settlement*

*Grinnell* Factors 8 and 9 requires the Court to consider the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. These two factors are often combined for the purposes of analysis.  *In re Payment Card*, 330 F.R.D. at 47–48.

Determining whether a settlement amount is reasonable does not necessarily involve "a mathematical equation yielding a particularized sum."  *Henry v. Little Mint, Inc.*, No. 12-CV-3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014) (quotes omitted).  Rather, it considers a range of reasonableness which recognizes the uncertainties of law and fact and the

accompanying costs of litigation. *Id.* For instance, a settlement which allows Class Members to be immediately paid is reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed. *Id.*

Here, the Settlement Fund is $2,720,000. (ECF No. 15-1 at 12.) Plaintiffs claim that this settlement payment "will yield a significant benefit to each of the participating Class Members." (*Id.*) Plaintiffs also cite to cases outside of this Circuit to demonstrate that this settlement amount is favorable to the Class. (*See id.*) "[S]ettlements have been approved as reasonable where the settlement provides a 'meaningful benefit' to the class." *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *12 (internal citations omitted). Moreover, "[t]his method is undoubtedly sooner than if each Class Member waited to receive payment after trial, assuming they were successful." *Abarza*, 2025 WL 1519147, at *13. It therefore follows that if the Class were to continue litigation, it may be subject to motion practice (*i.e.*, motion to dismiss, summary judgment) and the other uncertainties that could ensue. *See Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *12 (E.D.N.Y. Sept. 9, 2024) ("Given the many legal and factual uncertainties involved in litigation, this factor favors settlement approval.")

This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors. *See Henry*, 2014 WL 2199427 at *10.

## C. <u>Appointment of Class Counsel</u>

Plaintiffs propose that GR and Levi be appointed as Co-Class Counsel. (ECF No. 15-1 at 17.) If the Court conditionally certifies the proposed Class, Rule 23(c)(1)(B) requires the appointment of class counsel under Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B). Rule 23(g) provides four factors for the Court to consider in evaluating the adequacy and appointing class

counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(A)(i)–(iv).

First, Counsel, while conducting informal discovery, identified the issues herein and used such information in reaching this proposed settlement. (ECF No. 15-1 at 10.) Second, both firms outline their extensive experience with class actions. (ECF Nos. 15-10 at 3; 15-12 at 2.) Third, Mark S. Reich is a Partner of the Levi Firm and among other things focuses on privacy and data breach cases. (ECF No. 15-10 at 45.) Likewise, GR has "filed approximately 80 consumer protection class actions and prevailed on the majority of contested motions—creating important precedent along the way." (ECF No. 15-12 at 2.) Fourth, the two firms working together illustrate that the resources are great, they have handled class actions before to understand what is required and their resumes demonstrate their abilities to ensure a full commitment to the class. (*See generally*, ECF Nos. 15-10; 15-12.) More to that point, Kroll will be taking the proper steps to ensure the Class receives their portion of the Settlement Fund. (ECF No. 15-9 at 7-8, 12-13.)

Accordingly, Levi and GR meet the criteria of Rule 23(g) and should be appointed as Co-Class Counsel.

### D.  **The Proposed Notice of Settlement**

Plaintiffs seek approval of the Proposed Notice.  (ECF No. 15-1 at 18.) Where, as here, parties are both seeking to certify a settlement class and settle a class action, both the requirements of Rule 23(c) (notice for class certification) and Rule 23(e) (notice for settlement or dismissal) must be met. *Chang*, 2019 WL 8105999 at *13. Pursuant to Rule 23(e), the Court is to "direct notice in a reasonable manner to all class members who would be bound by the

proposal." Fed. R. Civ. P. 23(e)(1)(B).  Upon ordering notice pursuant to Rule 23(e)(1), Rule 23(c)(2)(B), requires that "the court must direct [that] class members [be provided with] the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  This may be by mail, electronic, or other appropriate means.  *Id.* Class Notice must include:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)     that a class member may enter an appearance through an attorney if the member so desires;

(v)      that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion; and

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(iv).

Here, Plaintiffs state that the "proposed notice will primarily be accomplished by electronic means, such as email, and if needed, will be published on the Limited Run Games Website. Notice may also be sent by postcard to Settlement Class Members whose email addresses are invalid." (ECF No. 15-1 at 18.) Defendant also shall produce an electronic list from its records that includes the names, email addresses, telephone numbers and/or usernames associated with persons belonging to Persons within the Settlement Class within fourteen (14) days after Preliminary Approval. (ECF No. 15-9 at § 4.1.) Following that, the Settlement Administrator shall send Notice via email, along with an electronic link to the Claim Form, to all Settlement Class Members for whom a valid email address is available. (*Id.* at § 4.1.1.) Additionally, Kroll must reasonably correct any issues and do its due diligence to locate any

28

missing information. (*Id*.) Additionally, Kroll will send a Reminder Notice seven (7) days prior to the Claims deadline. (*Id*. at § 4.1.2.) Further, each of the enumerated criteria set out by Rule 23(c) above are found in Plaintiffs' Proposed Notice. (*See* ECF Nos. 12-4-6.) However, Plaintiffs shall completely fill out the proposed notice forms with dates upon sending notices. (*See id*.)

Accordingly, the proposed Notice and its plan of distribution should be approved.

**E.  Approval of the Class Administrator**

Finally, Plaintiffs propose the Court appoints Kroll as Class Administrator. The Court is satisfied with the procedures that Kroll is to take in the role it will be assigned. And the Court has no doubt that Kroll is qualified to act as Class Administrator.  Indeed, Kroll has been appointed Administrator in a variety of class actions in this Circuit. *See e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, No. 19-CV-0972 (AJN), 2021 WL 11706821, at *6 (S.D.N.Y. Oct. 26, 2021) ("The Parties have jointly selected a reputable settlement administrator, Kroll Settlement Administration LLC ('Kroll') to serve as the Settlement Administrator"); *Everetts v. Pers. Touch Holding Corp.*, No. 21-CV-02061 (JMA) (ARL), 2024 WL 227811, at *4 (E.D.N.Y. Jan. 22, 2024) ("The Court appoints Kroll as the Settlement Administrator, with responsibility for class notice and claims administration"); *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, No. 14-MC-2548 (VEC), 2022 WL 1043672, at *3 (S.D.N.Y. Jan. 13, 2022) ("The Court approves Class Plaintiffs' designation of Kroll Settlement Administration as the Claims Administrator"). Kroll is known for its experience as a class administrator.[2] *See Whelan v. Diligent Corp.*, 349 F.R.D. 79, 86 (S.D.N.Y. 2025) (emphasis added) ("The parties have agreed to utilize Angeion, *an experienced class action administrator*, as the independent administrative entity that will verify

---

[2] *See* KROLL, https://www.kroll.com/en/services/settlement-administration/class-action (last visited Aug. 20, 2025).

class members' claims, distribute relief, and process objections and opt-outs.") Therefore, the undersigned recommends that Kroll be appointed as Class Administrator.

## **<u>CONCLUSION</u>**

For the reasons stated herein, it is respectfully recommended that Plaintiffs' Motion for Settlement (ECF No. 15) be **GRANTED**, and the following be **ORDERED**:

A. The Court finds on a preliminary basis that the settlement memorialized in the Agreement and filed with the Court falls within the range of reasonableness and meets the requirements for preliminary class settlement approval;

B. The Court conditionally certifies, for settlement purposes only, the following Federal Rule of Civil Procedure 23 Class ("Class") described in the Agreement: All persons who accessed the Limited Run Game Service in the United States and watched a pre-recorded video or purchased a video game containing a "Cut Scene" between January 1, 2016 and June 20, 2025;

C. The Court finds, on a preliminary basis for settlement purposes only, that the requirements of Federal Rule of Civil Procedure 23 are satisfied;

D. The Court appoints named Plaintiffs, John Carbone and Ryan Adkins, for settlement purposes only, as Class Representatives;

E. The Court appoints Gucovschi Rozenshteyn, PLLC and Levi & Korinsky LLP, for settlement purposes only, as Class Counsel;

F. The Court appoints Kroll LLC as Claims Administrator;

G. The Court approves the proposed Notice for distribution to Class Members;

H. The deadline for Class Members to opt-out of the Settlement or to make objections to the Settlement shall be September 18, 2025; and

I. The Court will conduct an in-person Final Approval Hearing at a time convenient for the Court to determine (a) whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be given final approval by the Court; (b) whether a judgment and order of dismissal with prejudice should be entered; (c) whether to approve the Fee Award to Class Counsel; and (d) whether to approve the payment of service awards to the Class Representatives.

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further

judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York.
       August 21, 2025

                                  **RESPECTFULLY RECOMMENDED**,

                              /S/ *James M. Wicks*
                                   JAMES M. WICKS
                        United States Magistrate Judge

32