**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN CARBONE and RYAN ADKINS, individually and on behalf of all others similarly situated, | Civil Action No. 2:24-cv-08861-NJC-JMW |
| Plaintiffs, | Hon. Nusrat J. Choudhury |
| v. | |
| LIMITED RUN GAMES, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS

Dated: December 12, 2025

**LEVI& KORSINSKY LLP**

By:*/s/ Mark S. Reich*
Mark S. Reich (MR-4166)
Michael N. Pollack (6173272)
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

Adrian Gucovschi
**GUCOVSCHI LAW FIRM PLLC**
140 Broadway Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Email: adrian@gucovschilaw.com

*Counsel for Plaintiffs*

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 2

    I.     PLAINTIFFS' ALLEGATIONS ..................................................... 2

    II.    THE LITIGATION AND WORK PERFORMED TO BENEFIT THE CLASS ... 2

SUMMARY OF THE SETTLEMENT ........................................................................... 4

ARGUMENT .................................................................................................................. 4

    I.     THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ............................................... 4

         A.    The Percentage Method Should Be Used To Calculate Fees ........................... 5

         B.    The Reasonableness Of The Requested Fees Under the Percentage-Of-The-Fund Method Is Supported By This Circuit's Six-Factor *Goldberger* Test ...... 7

    II.    THE REQUESTED ATTORNEYS' FEES ARE ALSO REASONABLE UNDER A LODESTAR CROSS-CHECK ....................................................... 14

    III.   THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED ........... 17

CONCLUSION ............................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008) ........................................................................... 6

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
  No. 96 CIV. 0583(DAB), 2002 WL 1315603 (S.D.N.Y. June 17, 2002) ................................... 6

*Blum v. Stenson*,
  465 U.S. 886 (1984) ........................................................................... 15

*Caccavale v. Hewlett-Packard Company*,
  No. 2:20-CV-974 (NJC) (ST), 2025 WL 2960237 (E.D.N.Y., Oct. 20, 2025) ........................... 9

*Cassese v. Williams*,
  503 F. Appx. 55 (2d Cir. 2012) ........................................................................... 15

*Castagna v. Madison Square Garden, L.P.*,
  No. 09–cv–10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ........................... 12

*Charron v. Pinnacle Gorup, N.Y. LLC*,
  874 F.Supp.2d 179 (S.D.N.Y. 2012) ........................................................................... 9

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................... 18

*Fleisher v. Phoenix Life Ins. Co.*,
  Nos. 11-cv-8405 (CM), 14-cv-8714 (CM) 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........ 5

*GB ex rel NB v. Tuxedo Union Free School Dist.*,
  894 F. Supp. 2d 415 (S.D.N.Y. 2012) ........................................................................... 6

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000) ........................................................................... passim

*Hyun v. Ippudo USA Holdings*,
  No. 14-CV-8706 (AJN), 2016 WL 1222347 (S.D.N.Y. Mar. 24, 2016) ........................... 6, 16

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ........................................................................... 6

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  Master File No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................ 6

*In re Hi-Crush Partners L.P. Securities Litigation*,
  No. 12–Civ–8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................... 11

*In re Hulu Privacy Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........................................................ 10

*In re Hulu Privacy Litig.*,
    No. C 11–03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014)........................................... 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MD 2262 (NRB), 2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018)................................ 18

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................. 10

*In re Nasdaq Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998)....................................................................... 8

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    746 F. Appx. 655 (9th Cir. 2018)...................................................................... 17

*Jancik v. WebMD LLC*,
    No. 1:22-CV-644-TWT, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025)...................... 10

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997).......................................................................... 15

*Martinez v. D2C, LLC*,
    No. 23-21394-Civ-Scola, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ................... 10

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11–cv–05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)...................... 14, 18

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010) ....................................................................... 5, 6

*Monzon v. 103W77 Partners, LLC*,
    Nos. 13 Civ. 5951(AT), 14 Civ. 530(AT), 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) .................... 5

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
    No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)............................... 17

*Parker v. Time Warner Entertainment Co., L.P.*,
    631 F. Supp. 2d 242 (E.D.N.Y. 2009)................................................................ 15

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) ................................................................................ 15

*Reyes v. Buddha-Bar NYC*,
No. 08 Civ. 02494(DF), 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ............................ 11, 18

*Roberts v. TJX Companies, Inc.*,
No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016)..................................... 8

*Shapiro v. JPMorgan Chase 7 Co.*,
No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)............. 8, 13, 15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........................................................................... 11

*Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)............................................................................ 14

*Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................................... 10

*Therrien v. Hearst Television, Inc.*,
No. 23-10998-RGS, 2025 WL 509454 (D. Mass. Feb. 14, 2025) ................................. 10

*Velez v. Novartis Pharm. Corp.*,
No. 04 Civ. 09194(CM), *2010 WL 4877852* (S.D.N.Y. Nov. 30, 2010) ........................... 5, 9, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)....................................................................................... 6, 14

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12 Civ. 3693(PGG), 2013 WL 5492998
(S.D.N.Y. Oct. 2, 2013) ........................................................................................ 5, 11, 17

**Statutes**
Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 ........................................................ 2

**Rules**
Federal Rule of Civil Procedure 23(h)...................................................................... 1, 2, 4

## INTRODUCTION

Plaintiffs John Carbone and Ryan Adkins ("Plaintiffs") subscribed to and used the Limited Run Games online and mobile applications (the Service), including limitedrungames.com ("Website") owned and operated by Defendant Limited Run Games, Inc., which disclosed their personally identifiable information ("PII") and video-viewing to third parties. Amended Complaint ("AC") (ECF No. 11) ¶¶ 1, 2.

Now, as a result of Plaintiffs' and Class Counsel's efforts —and with the mediation before the Honorable Robert L. Dondero (Retd.) with JAMS — the parties reached a Class Action Settlement (ECF No. 15) (the "Settlement")[1] that prevents disclosure of an individual's video content to Meta and adequately compensates Class Members. The Settlement—preliminarily approved by this Court on November 21, 2025—provides $2.72 million in cash value to approximately 450,000 Class Members in a non-reversionary fund from which all Class Members are entitled to a *pro rata share*. Declaration of Mark S. Reich (the "Reich Decl.") ¶ 9.

In light of this exceptional result, Plaintiffs respectfully request pursuant to Federal Rule of Civil Procedure 23(h) that the Court approve attorney's fees in the amount of $906,666.00 (i.e., one-third (33.33%) from the Settlement Fund. Calculating the fee award based on a percentage of the Settlement Fund is straightforward, fair, and strongly supported by Second Circuit case law. Cross-checking this percentage fee against Class Counsel's lodestar validates the reasonableness of Class Counsel's fee request. As of December 12, 2025, Class Counsel had worked 354.11 hours on this case for a total lodestar fee, at current billing rates, of $222,767.50 Reich Decl. ¶ 29; *see also id.* Ex. A (Levi and Korsinsky, LLP's detailed billing records for this case); Declaration of Adrian Gucovschi (the "Gucovschi Decl."), Ex. 2 (Gucovschi Law Firm PLLC's detailed billing records). A fee award of $906,666.00 would represent a multiplier of

---

[1] All capitalized terms used herein shall have the same meaning as defined in the Settlement.

approximately 4.07 over the base lodestar fee, which is well within the accepted range of multipliers approved by the courts in the Second Circuit.

Class Counsel also respectfully requests, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve costs and expenses in the amount of $7,564.41.

Finally, Plaintiffs request that the Court award them a service award in the amount of $2,500 each to account for the significant time and effort they invested in this case on behalf of the Class.

For these reasons, and as explained further below, this Court should approve the requested fees, costs, expenses, and incentive awards.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PLAINTIFFS' ALLEGATIONS

Plaintiffs and Class Members are all subscribers and users of the Service.  Plaintiffs allege that Defendant, "knowingly and intentionally discloses Limited Run Games Users' personally identifiable information—including a record of every video viewed by the user or audiovisual content purchased—to unauthorized third parties." AC ¶ 2.  Plaintiffs bring claims for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *Id.* ¶ 2. Defendant denies any and all wrongdoing and denies that Plaintiffs can support their claims.

### II.    THE LITIGATION AND WORK PERFORMED TO BENEFIT THE CLASS

This putative class action originated from a filing on December 27, 2024, in the United States District Court for the Eastern District of New York (Central Islip).    Reich Decl. ¶ 1. This action was filed by Plaintiff John Carbone and Ryan Adkins in the case styled *Carbone v. Limited Run Games Inc.*, No. 2:24cv8861 (E.D.N.Y.). *Id.*  Plaintiffs filed this class action against Limited Run Games, LLC alleging violations of the VPPA. *Id.*

On January 27, 2025, the Court ordered a scheduling order setting an Initial Conference

2

for March 4, 2025 before Magistrate Judge James M. Wicks. On May 1, 2025, the Court reviewed the Joint Status Report filed on April 30, 2025, by Limited Run Games, Inc., and set deadlines for an amended complaint on May 8, 2025, a preliminary settlement approval by June 20, 2025, and an in-person conference on July 9, 2025. *Id.* at 2-5. On May 7, 2025, Plaintiffs John Carbone and Ryan Adkins filed an amended putative class action complaint. *Id.* at 6. On April 21, 2025, the Parties engaged in a mediation with Justice Robert Dondero (Retd.) serving as mediator. On April 21, 2025, the Parties negotiated at arm's-length and came to an agreement to settle the matter. *Id.* ¶ 6-9.

At the conclusion of the mediation, the Parties reached a settlement in principle and LRG agreed to pay $2,720,000.00 into a non-reversionary Settlement Fund to resolve Plaintiffs' and Settlement Class Members' claims against LRG. The Settlement Fund will pay for: (1) costs of Notice and Settlement Administration; (2) any Service Award for the Settlement Class Representative approved by the Court; (3) any attorneys' fees and expenses approved by the Court; and (4) Settlement Payments for the Settlement Class pursuant to the Settlement. The Settlement also requires LRG to make business practices changes. *Id.* The term sheet permitted Class Counsel to apply to the Court for payment of an award of attorneys' fees, costs, and expenses of no more than 33.33% of the Settlement Fund ($906,666.00). ECF 15-9 at 22.

The first round of preliminary-approval submissions occurred when Plaintiffs filed their initial motion on June 20, 2025 (ECF No. 12), which the Court referred to Magistrate Judge Wicks for a report and recommendation (ECF No. 12; June 24, 2025 Order) and later flagged for internal inconsistencies requiring clarification (July 10, 2025 Order). After the parties filed their supplemental clarification letter (ECF No. 13) and then a corrected preliminary-approval motion on July 24, 2025 (ECF No. 15), together with revised notice and release materials (ECF Nos. 18–

19), the Court granted preliminary approval in a written order on November 21, 2025 (ECF No. 21). On November 21, 2025, the Court (i) preliminary approved the Class Action Settlement Agreement; (ii) conditionally certified the class for the sole purpose of effectuating the Settlement Agreement; (iii) appointed John Carbone and Ryan Adkins as Class Representatives; (iv) and appointed Gucovschi Law Firm PLLC and Levi & Korsinsky, LLP as Class Counsel. ECF No. 21. During and since that time, Class Counsel has worked with the Settlement Administrator to administer the Notice Plan. Reich Decl. ¶¶ 27-28.

## SUMMARY OF THE SETTLEMENT

Class Counsel's efforts resulted in an outstanding settlement. Under the Settlement Agreement, LRG agreed to pay $2,720,000.00 into a non-reversionary Settlement Fund to resolve Plaintiffs' and Settlement Class Members' claims against LRG. The Settlement Fund will pay for: (1) costs of Notice and Settlement Administration; (2) any Service Award for the Settlement Class Representative approved by the Court; (3) any attorneys' fees and expenses approved by the Court; and (4) Settlement Payments for the Settlement Class pursuant to the Settlement. The Settlement also requires LRG to make business practice changes. Reich Decl. ¶ 9.

## ARGUMENT

## I.    THE REQUESTED ATTORNEYS' FEES, COSTS, AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h).[2] Here, Plaintiffs request a fee award of $906,666.00 which represents *at most* 33.3% of

---

[2] The requested fee award also encompasses unreimbursed litigation expenses. ECF 15-9 at 22. Reasonable litigation-related expenses are customarily awarded in class action settlements and include costs such as document preparation and travel. See, e.g., *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2,

the value of the Settlement.  ECF 15-9 at 22.  This percentage does not take into account the value of stopping the disclosure of personal information by Defendant.  Settlement ¶ 2.2; *see also Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *8, *18 (S.D.N.Y. Nov. 30, 2010) (both monetary and non-monetary relief considered in calculating value of settlement); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) (same). This is on par with the one-third benchmark used in this Circuit under the percentage-of-the-recovery method—which the Court should employ—and should be approved as such. Alternatively, the requested Attorneys' Fees and Expenses award is reasonable under the lodestar method.

## A.  The Percentage Method Should Be Used To Calculate Fees

Courts in the Second Circuit apply one of two fee calculation methods: the "percentage of the fund" method or the "lodestar" method.  *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The Court has discretion in choosing which method to employ.  *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to 'the district court, which is intimately familiar with the nuances of the case'") (quoting *Goldberger*, 209 F.3d at 48).  However, "[t]he trend in the Second Circuit is to use the percentage of the fund method … as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015).  "In fact, the 'trend' of using the percentage of the fund method to compensate plaintiffs' counsel … is now firmly entrenched in the jurisprudence of this Circuit."

2013) ("Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class."). Thus, included in the requested fee award, Class Counsel respectfully seeks reimbursement of $7,564.41 for out-of-pocket expenses in these standard categories. See Reich Decl. ¶ 34 and Gucovschi Decl. ¶ 17.

*In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013); *see also GB ex rel NB v. Tuxedo Union Free School Dist.*, 894 F. Supp. 2d 415, 427 (S.D.N.Y. 2012) (noting "courts in the Second Circuit no longer use the 'lodestar' method for computing attorneys' fees" in fee-shifting cases) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)).

As the Second Circuit has stated, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). "In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits.'" *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)). Indeed, over a decade ago, the Second Circuit described difficulties with the lodestar method:

> As so often happens with simple nostrums, experience with the lodestar method proved vexing. Our district courts found it created a temptation for lawyers to run up the number of hours for which they could be paid. For the same reason, the lodestar created an unanticipated disincentive to early settlements. But the primary source of dissatisfaction was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits. There was an inevitable waste of judicial resources.

*Goldberger*, 209 F.3d at 48-49; *see also Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'creative a disincentive to early settlement' … is appropriate.") (citing *McDaniel*, 595 F.3d at 418); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("From a public policy perspective, the percentage method is the most efficient means of compensating the work of class action attorneys. It does not

waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior result.").

Under the circumstances of this case—wherein Class Counsel received an exceptional result for the Settlement Class—the Court should employ the percentage-of-the-recovery method.

**B. The Reasonableness Of The Requested Fees Under the Percentage-Of-The-Fund Method Is Supported By This Circuit's Six-Factor *Goldberger* Test**

The Second Circuit has articulated six factors that should be considered when determining the reasonableness of a requested percentage to award as attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation []; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. A review of these factors supports Class Counsel's fee request.

### 1. Time And Labor Expended By Counsel

Since Class Counsel began investigating this matter in April 2024, Counsel has devoted 354.11 hours to the successful pursuit of this matter. Reich Decl. Ex. A., Gucovschi Decl. Ex. 2. Class Counsel's dedication to this matter and expenditure of substantial time, effort, and resources has brought this complex litigation to a successful resolution. Class Counsel's work included, *inter alia*:

i.     conducting an extensive, pre-suit factual investigation of the Defendant Limited Run Games, involving a dynamic analysis of Defendant's Service;

ii.    interviewing numerous interested Class Members, including Plaintiffs, regarding their usage of the Service;

iii.   drafting the initial Complaint, and the Amended Complaint;

iv.    conferring with defense counsel regarding discovery and a case management schedule, and drafting a Fed. R. Civ. P. 26(f) report;

> v.    holding numerous telephonic calls with defense counsel regarding settlement;
>
> vi.   drafting a mediation statement and participating in a full-day mediation with Justice Robert Dondero (Ret.) on April 21, 2025;
>
> vii.  drafting a Class Action Settlement Agreement setting forth the terms and conditions agreed upon in the settlement in principle;
>
> viii. successfully moving for Preliminary Approval of the Settlement; and as identified by the Court, submitted revisions to Exhibit C, and changed Exhibits B and D with Kroll.
>
> ix.   communicating with the Claims Administrator regarding implementation of the Notice Plan and sorting out issues with the class data.

*See* Reich Decl. ¶¶ 1-14; 27-28

Further, Class Counsel's work in this litigation is far from over. On the contrary, Class Counsel will commit significant ongoing time and resources to this litigation, specifically related to administering the Settlement and responding to class member inquiries concerning the claims process. *Id.* ¶ 20. Based on Class Counsel's experience in other cases, this ongoing work will likely involve approximately fifty total additional hours. *Id* at 30. This additional work should be accounted for as well. *See Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (awarding one-third and noting that class counsel has "already committed, and anticipate continuing to commit, additional time to the administration of the claims."). Thus, this factor favors the fee request.

## 2.    Magnitude And Complexity of The Litigation

The complex nature of this litigation further favors the requested fee award. "[C]lass actions have a well-deserved reputation as being most complex." *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (cleaned up); *see also Shapiro v. JPMorgan Chase 7 Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *73 (S.D.N.Y. Mar. 24, 2014) ("It is well settled that class actions are notoriously complex and difficult to litigate")

(cleaned up). Indeed, as Judge McMahon has observed, "[t]he federal courts have established that a standard fee in complex class action cases … where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez*, 2010 WL 4877852, at *21. This court has recognized such complexity *Caccavale v. Hewlett-Packard Company,* No. 2:20-CV-974 (NJC) (ST), 2025 WL 2960237, at *14 (E.D.N.Y., Oct. 20, 2025) (this "litigation involved the complexities of class litigation") This complexity is particularly evident in data privacy cases, which involve technical expertise in an evolving area of law.

Class Counsel more than delivered. In less than a year of litigation, Class Counsel (i) conducted an extensive pre-suit investigation into Defendant's data sharing practices, including commissioning a dynamic analysis of Defendant's Website; (ii) drafted the initial Complaint, and Amended Complaint; (iii) reviewed information produced by Defendant both prior to and after Plaintiffs executed the Settlement; (iv) attended a full-day mediation with Justice Robert Dondero (Ret.); (v) successfully moved for preliminary approval; and (vi) managed (and are continuing to manage) the dissemination of notice and the claims process. Reich Decl. ¶¶ 1-14; 27-28.

The work performed by Class Counsel in this case represents the highest caliber of legal work and strongly supports their requested fee award. *Id.*; *see also Charron v. Pinnacle Gorup, N.Y. LLC*, 874 F.Supp.2d 179, 195 (S.D.N.Y. 2012) (approving attorneys' fees where class counsel "undertook a comprehensive pre-suit investigation" which included speaking with clients, reviewing documents, and researching potential claims).

### 3. The Risk Of Litigation

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis).

This case presented a substantial risk of non-payment for Class Counsel. Class Counsel invested significant time, effort, and resources to the litigation without any compensation. Reich Decl. ¶¶ 24-25. Class Counsel also undertook significant financial risk in prosecuting this case . Moreover, while Plaintiffs believe they would likely prevail on their claims, they are also aware of the serious risks inherent in their claims. Few VPPA cases have made it to class certification, and courts that have adjudicated these cases have largely denied class certification. *Compare Jancik v. WebMD LLC*, No. 1:22-CV-644-TWT, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) (granting class certification of a VPPA claim); *with Martinez v. D2C, LLC*, No. 23-21394-Civ-Scola, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) (denying class certification of a VPPA claim); *In re Hulu Privacy Litig.*, No. C 11–03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) (same); *Therrien v. Hearst Television, Inc.*, No. 23-10998-RGS, 2025 WL 509454 (D. Mass. Feb. 14, 2025) (same). And so far, no VPPA claim has made it past summary judgment. *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (granting summary judgment for defendant on VPPA claim); *Therrien*, 2025 WL 1208535 (same).

In addition, in early May 2025, the Second Circuit held in an issue of first impression that a Facebook ID and URL string sent to Facebook were not "personally identifiable information"

within the meaning of the VPPA. *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, at *11 (2d Cir. 2025), which would bear on the issues here.

All this is to say, while Plaintiffs believe they will succeed at later stages of the litigation, when considering the potential outcomes of litigation and trial, "the Class's recovery [might] have been commensurately smaller, or nonexistent." *In re Hi-Crush Partners L.P. Securities Litigation*, No. 12–Civ–8557 (CM), 2014 WL 7323417, at *16 (S.D.N.Y. Dec. 19, 2014). So "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494(DF), 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (cleaned up). This is especially true given the significant risks Plaintiffs face here. In such circumstances, "it is proper 'to take the bird in the hand instead of the prospective flock in the bush.'" *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (cleaned up). Indeed, "'[f]ederal courts look with great favor upon the voluntary resolution of litigation through settlement…. This rule has particular force regarding class action lawsuits.'" *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (cleaned up). Settlement only becomes even more favorable when "[a]ppeals would certainly follow, thus lengthening and increasing the cost of the litigation[,]" and "it is not certain whether the class would remain certified for trial." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175-78 (S.D.N.Y. 2000).

Moreover, approval would allow Plaintiffs and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. As the Second Circuit has held, "[c]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Yuzary*, 2013 WL 1832181, at *2; *see also Castagna v.*

11

*Madison Square Garden, L.P.*, No. 09–cv–10211 (LTS)(HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending Class Counsel for "negotiat[ing] an excellent settlement early in the litigation thus saving hundreds of hours of legal time that would have increased their fees").

In short, Class Counsel achieved an excellent result here in comparison to other VPPA cases, and one that obviates the significant risks of non-payment absent settlement.

### 4.    The Quality of Representation

Mark S. Reich is a partner at Levi & Korsinsky LLP. Admitted to the New York bar since 2001, Mr. Reich has spent over two decades advancing the rights of consumers through complex and high-profile litigation.

Throughout a robust 24-year tenure in class action litigation, Mr. Reich has assumed leadership in significant litigations against prominent corporate defendants, including the Criterion Collection (*Lucchese-Soto, et al. v. The Criterion Collection, LLC*, Case No. 1:24-CV-07345-VEC (S.D.N.Y) (class settlement establishing a $4.5 million fund to resolve claims that subscriber viewing data was improperly shared with third parties); *Stoudemire v. Lee Enters., Inc.*, No. 3:22-cv-00086-SHL-WPK (S.D. Iowa) (securing a privacy settlement establishing a $9.5 million fund); Museum of Illusions (*Valcarcel v. Beyond Illusion, LLC d/b/a Museum of Illusions N.Y.*, Index No. 655436/2024 (N.Y. Sup. Ct. N.Y. Cnty. Nov. 17, 2025) (NYSCEF Doc. No. 31) (securing a privacy settlement of $580,721). These cases required deep knowledge of consumer protection law, class action procedure, and the ability to coordinate discovery and advocacy across multiple jurisdictions and litigation teams.

Mr. Reich's appointment to leadership positions in national class actions underscores his commitment to consumer protection. He is deeply familiar with the factual, procedural, and

strategic dimensions of class action practice, having worked from initial investigation and pleading through discovery, motion practice, settlement negotiation, and trial. A copy of Levi Korsinsky, LLP's firm resume is attached as Exhibit C to Reich Decl.

Multiple courts have previously found Adrian Gucovschi's representation to be fair and reasonable *See e.g.*, *Winston v. Peacock TV LLC*, 23-cv-8191(S.D.N.Y), ECF No. 47; *O'Malley, et al. v. FloSports, Inc.*, No. 2023LA000516 (Cir. Ct. DuPage Cty., Ill. 2023); *Burdette, et al. v. FuboTV, Inc., et al.*, Case No. 2024LA001460 (Cir. Ct. DuPage Cty., Ill. May 29, 2025); *Bell v. Pharmacy, Inc.*, No. 21-cv-6850 (E.D.N.Y. August 26, 2024), ECF No.81; *Dutcher v. Newrez LLC,* No. 21-2062, 2022 U.S. Dist. LEXIS 194706, at *15-16 (E.D. Pa. Oct. 20, 2022). A copy of Adrian Gucovschi's firm resume is attached as Exhibit 1 to Gucovschi Decl.

### 5. The Requested Fee In Relation To The Settlement

Class Counsel seeks attorneys' fees of $906,666.00. Reich Decl. at ¶ 14. "District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez*, 2010 WL 4877852, at *21.

Here, the requested Attorneys' Fees represent 33.3% of the cash value of the Settlement ($2,720,000.00), right on par with the Second Circuit's benchmark for fees. Reich Decl. ¶ 33. And, this percentage does not take into account the value of injunctive relief from Defendant. This factor thus supports the requested fee award.

### 6. Public Policy Considerations

The final *Goldberger* factor is public policy. "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]." *Shapiro*, 2014 WL 1224666, at *24. As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to

police defendants who engage in misconduct. *See id.* "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 (BMC), 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396-98 (S.D.N.Y. 1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount of time expended."). Thus, society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect consumer rights, particularly where it is unlikely that the Class Members will pursue litigation on their own for economic or personal reasons.

Here, public policy considerations also favor Class Counsel's fee request. As a result of the Preliminary Settlement achieved by Class Counsel, Defendant, upon entry of Final Judgment, agreed prospective relief, which is provided in addition to the monetary benefit provided for in the Settlement. Accordingly, Class Counsel's work as secured a substantial benefit for the Class, and public policy therefore favors this fee request.

## II.    THE REQUESTED ATTORNEYS' FEES ARE ALSO REASONABLE UNDER A LODESTAR CROSS-CHECK

A lodestar cross-check further supports the requested fee. Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See Wal–Mart Stores, Inc.*, 396 F.3d at 121. Where the lodestar is "used as a mere cross-check, the hours documented

by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. Appx. 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009). The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors. *See Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at \*24 ("[U]nder the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.") (cleaned up).

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original and citation omitted). Here, the hourly rates used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market. *See* Reich Decl. ¶ 33.[3]

The hours worked, lodestar, and expenses for Class Counsel are set forth in the

---

[3] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. See *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher*, 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

Gucovschi Decl. and Reich Decl., submitted herewith. These records confirm Class Counsel's efficient billing, by, for example, striving to assign as much work as possible to more junior lawyers or paralegals who bill at lower hourly rates in order to minimize the fees for the Class. *See* Reich Decl. Ex. A; Gucovschi Decl Ex. 2. Indeed, as these billing records indicate, approximately 80% of the time billed to this matter was by non-partners. *Id.*

Thus, even under the optional lodestar cross check, Class Counsel's requested fees are reasonable given the unique circumstances of this case. Specifically:

- Class Counsel obtained an excellent Settlement, which will result in class members receiving a substantial amount of money quickly.

- The litigation was conducted and the Settlement was obtained in an efficient manner, by experienced and qualified counsel.

- The case involved complex legal issues and factual theories, which involved significant litigation risks.

- Class Counsel devised a litigation and settlement strategy that factored in the complex and uncertain nature of the case.

In total, through December 12, 2025, Class Counsel has devoted 354.11 hours to prosecuting this litigation with an aggregate lodestar of $222,767.50. *See* Reich Decl. Ex. A, Gucovschi Decl. Ex. 2. As courts in New York and elsewhere have noted, a high multiplier "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount was substantial." *Beckman*, 293 F.R.D. at 482; *Hyun*, 2016 WL 1222347, at *3 ("In this case, where the parties were able to settle relatively early and before any depositions occurred … the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' … is appropriate."); *see also Perez*, 2020 WL 1904533, at *21 ("The benefit obtained for the class is an extraordinary result, while there was and still is significant risk of nonpayment for class counsel. Moreover, the general quality of the representation and the complexity and novelty of the issues presented

weigh in favor of a higher lodestar multiplier."). Class Counsel's lodestar multiplier is also reasonable because it will decrease over time. "[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time." *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010). Here, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *Yuzary*, 2013 WL 5492998, at *11; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. Appx. 655, 659 (9th Cir. 2018) ("The district court did not err in including projected time in its lodestar cross-check; the court reasonably concluded that class counsel would, among other things, defend against appeals and assist in implementing the settlement."); *Perez*, 2020 WL 1904533, at *19-20 (concluding that expected future hours should be counted towards lodestar cross-check and applying same). Specifically, as noted above, Class Counsel expects to bill another fifty hours on this matter. Reich Decl. ¶ 30. This higher lodestar would reduce Class Counsel's requested multiplier further.

In sum, Class Counsel's efforts in this case resulted in an exceptional settlement of a complex and uncertain case. Class Counsel should be rewarded for achieving this result.

## III.    THE REQUESTED INCENTIVE AWARD REFLECTS PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED

In recognition of their efforts on behalf of the Class, and subject to the approval of the Court, Mr. John Carbone and Mr. Ryan Adkins seek a $2,500 incentive award each as appropriate compensation for their time and effort serving as the Class Representatives in this litigation.

Incentive awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Reyes*, 2011 WL 4599822, at *9. Incentive awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Massiah*, 2012 WL 5874655, at *8.

Here, the participation of Plaintiffs was critical to the ultimate success of the case. *See* Reich Decl. ¶¶ 35-39. Plaintiffs spent significant time protecting the interests of the class through their involvement in this case. *Id*. Plaintiffs assisted Class Counsel in investigating their claims by providing information necessary to draft and file the Complaint, and the First Amended Complaint. *Id*. During the course of this litigation, Plaintiffs kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy and settlement. *Id*.

On these facts, the $2,500 incentive payments to each Plaintiff are appropriate in light of the efforts made by Plaintiffs to protect the interests of the other Settlement Class members, the time and effort they expended pursuing this matter, and the substantial benefit they helped achieve for the other Settlement Class members. Further, the incentive awards are reasonable and equivalent to awards approved by other courts in this Circuit. *See*, *e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3863445, at *2 (S.D.N.Y. Aug. 14, 2018) (approving incentive awards of $25,000); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000).

Accordingly, a $2,500 service award for each Plaintiff is fair and reasonable.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) approve attorneys' fees in the amount of $906,666.00 and reasonable, costs and expenses in the amount

of \$7,564.41, (2) grant each Plaintiff an incentive award of \$2,500 in recognition of their efforts on behalf of the class; and (3) award such other and further relief as the Court deems reasonable and just.

Dated: December 12, 2025        Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Mark S. Reich*
Mark S. Reich (MR-4166)
Michael N. Pollack (6173272)
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

Adrian Gucovschi
**GUCOVSCHI LAW FIRM PLLC**
140 Broadway Suite 4667
New York, NY 10005
Telephone: (212) 884-4230
Email: adrian@gucovschilaw.com

*Counsel for Plaintiffs*

19