UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN CARBONE and RYAN ADKINS, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>LIMITED RUN GAMES, INC.,<br><br>　　　　　　　Defendant. | Civil Action No. 2:24-cv-08861-NJC-JMW<br><br>Hon. Nusrat J. Choudhury |

### DECLARATION OF MARK S. REICH IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND INCENTIVE AWARDS

I, Mark S. Reich, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. On December 27, 2024, Plaintiff John Carbone filed a putative class action in the United States District Court for the Eastern District of New York against Limited Run Games Inc. ("LRG"). The Complaint alleged violations of the Video Privacy Protection Act 18 U.S.C. § 2710, *et seq.* ("VPPA"). ECF No. 1.

2. On January 27, 2025, the Court ordered a scheduling order setting an Initial Conference for March 4, 2025 before Magistrate Judge James M. Wicks. (ECF No. 7).

3. On April 30, 2025, a Joint Status Report was filed by Limited Run Games, Inc. ECF No. 10.

4. On May 1, 2025, the Court reviewed the Joint Status Report and set deadlines for an amended complaint on May 8, 2025, a preliminary settlement approval by June 20, 2025, and an in-person conference on July 9, 2025. ECF No. 10.

5. On May 7, 2025, Plaintiffs John Carbone and Ryan Adkins filed an amended putative class action in the United States District Court for the Eastern District of New York. The Complaint alleged violations of the Video Privacy Protection Act 18 U.S.C. § 2710, et seq.

1

("VPPA"). ECF No. 11.

6. On April 21, 2025, the Parties engaged in a mediation with Justice Robert Dondero (Ret.) serving as mediator.

7. On April 21, 2025, the Parties negotiated at arm's length and came to an agreement to settle the matter, as described below.

8. The Settlement resolves claims asserted against LRG relating to Plaintiffs' allegations that LRG tracked Plaintiffs' and Settlement Class Members' activity on the LRG Website without the proper consent, then disclosed to Facebook and other third parties.

9. Under the Settlement Agreement, LRG agreed to pay $2,720,000.00 into a non-reversionary Settlement Fund to resolve Plaintiffs' and Settlement Class Members' (approximately 450,000 people) claims against LRG. The Settlement Fund will pay for: (1) costs of Notice and Settlement Administration; (2) any Service Award for the Settlement Class Representative approved by the Court; (3) any attorneys' fees and expenses approved by the Court; and (4) Settlement Payments for the Settlement Class pursuant to the Settlement. The Settlement also requires LRG to make business practice changes.

10. On June 20, 2025, Plaintiffs filed their Motion for Preliminary Approval of the Class Action Settlement, supported by several declarations and exhibits, because of certain drafting and factual inconsistencies within the settlement papers, Judge Wicks ordered the parties on July 10, 2025, to meet, clarify, and correct conflicting provisions relating to class definition, settlement-fund timing, and attorneys' fees language. Plaintiffs complied and filed a supplemental clarification letter on July 17, 2025.

11. On July 18, 2025, the Court directed the parties to file updated and corrected versions of the settlement documents, which Plaintiffs submitted in a revised motion on July 24,

2025. ECF No. 13.

12. On August 21, 2025, Judge Wicks issued a detailed Report & Recommendation advising that the Court should grant preliminary approval of the class settlement. The R&R recommended conditional class certification, appointment of class, appointment of Levi & Korsinsky LLP ("LK") and Gucovschi Law Firm PLLC ("GL") as Class Counsel, and approval of the proposed notice plan.

13. At a November 5, 2025 conference, the Court identified necessary revisions to the settlement notices and instructed the parties to file updated drafts, which were submitted on November 10, 2025. ECF No. 18.

14. Here, Class Counsel has requested $906,666.00 in attorneys' fees, $7,564.41 in costs and expenses, and a service award of $2,500 for each Plaintiff.

15. Plaintiffs and Class Counsel recognize that despite their belief in the strength of Plaintiffs' claims, and Plaintiffs' and the Class's ability to secure an award of damages, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain. Thus, the Settlement secures a more proximate and more certain monetary benefit to the Class than continued litigation.

16. To the best of my knowledge, while numerous putative class actions have been brought under the VPPA, few VPPA cases have made it to class certification, and courts that have adjudicated these cases have largely denied class certification. *Compare Jancik v. WebMD LLC*, No. 1:22-CV-611-TWT, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) (granting class certification of a VPPA claim); with *Martinez v. D2C, LLC*, No. 23-21394-Civ-Scola, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) (denying class certification of a VPPA claim); *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) (same); *Therrien v. Hearst Television,*

*Inc.*, No. 23-10998-RGS, 2025 WL 509454 (D. Mass. Feb. 14, 2025) (same).

17. Further, no VPPA claim has made it past summary judgment. *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) (granting summary judgment for defendant on VPPA claim); *Therrien v. Hearst Television, Inc.*, No. 23-10998-RGS, 2025 WL 1208535 (D. Mass. Apr. 25, 2025) (same).

18. Moreover, in early May 2025, the Second Circuit held in an issue of first impression that a Facebook ID and URL string sent to Facebook were not "personally identifiable information" within the meaning of the VPPA. See *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54-55 (2d Cir. 2025). Those are among the identifiers Plaintiffs allege are at issue here. ECF 11 at ¶ 24.

19. In addition, to even get the case to class certification, the Parties would have to undergo significant motion practice and expensive, expansive, and technologically intensive discovery. And given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both any decision on the merits as well as on class certification.

20. Looking beyond trial, Plaintiffs are also keenly aware that Defendant could appeal the merits of any adverse decision, and that in light of the statutory damages in play it would argue—in both the trial and appellate courts—for a reduction of damages based on due process concerns.

21. Defendant is also represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case, including by moving to dismiss and moving for summary judgment. Defendant would have also vigorously contested the certification of a litigation class, including the right to appeal the Court's order pursuant to Fed. R. Civ. P. 23(f). Thus, there was a significant risk of delay in achieving final

4

resolution of this matter.

22. Plaintiffs and Class Counsel are also mindful that, absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiffs and the Settlement Class Members of any potential relief whatsoever.

23. Plaintiffs and Class Counsel believe that the monetary relief provided by the Settlement weighs heavily in favor of a finding that the Settlement is fair, reasonable, and adequate, and well within the range of approval.

24. My firm undertook this representation on a wholly contingent basis, recognizing that the risk of non-payment has been high throughout this litigation. There were substantial uncertainties in the viability of this case as a class action, as well as substantial uncertainties in the merits of the underlying claims, and the ability to collect on any judgment that might be obtained. Although we believed the case to be meritorious, a realistic assessment shows that the risks inherent in the resolution of the liability issues, protracted litigation in this action as well as the probable appeals process, are great.

25. Had we not resolved this matter through settlement, we would have vigorously prosecuted the case through class certification, summary judgment, trial, and appealed any determinations that may have been adverse to the Class's interests. We were therefore at great risk for non-payment. In addition, as described above, we have advanced expenses that would not have been reimbursed absent a successful result.

26. Throughout this matter, Class Counsel has performed the following work on behalf of the Class: (i) conducting an extensive pre-suit investigation into Defendant's data sharing practices, including commissioning a dynamic analysis of Defendant's Website; (ii) drafting the amended Complaint; (iii) reviewing information produced by Defendant in aid of settlement

discussions; (iv) negotiating the Settlement at arm's-length with Defendant; (v) successfully moving for preliminary approval; and (vi) managing (continuing to manage) the dissemination of notice and the claims process.

27. Since the Court granted preliminary approval, Class Counsel has worked with the Settlement Administrator, Kroll Business Services ("Kroll"), to carry out the Court-ordered notice plan. Specifically, Class Counsel helped compile and review the contents of the required notice to State Attorney Generals pursuant to 28 U.S.C. § 1715, reviewed the final claim and notice forms, and reviewed and tested the settlement website before it launched live.

28. Since class notice has been disseminated, Class Counsel has worked with Kroll on a weekly basis to monitor settlement claims and any other issues that may arise. Class Counsel has also fielded calls from Settlement Class Members.

29. Attached hereto as **Exhibit A** are my firm's detailed billing diaries for this matter, which amount to 239.7 hours, or $137,855.00 in fees, as well as a summary of the same. I have personally reviewed all of my firm's time entries associated with this case and have used billing judgment to ensure that duplicative and unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included. Class Counsel's time entries were regularly and contemporaneously recorded by myself and the other timekeepers pursuant to firm policy and have been maintained in the computerized records of Class Counsel.

30. In addition to the time enumerated above, I estimate that Class Counsel will incur an additional fifty hours of future work in connection with the preparation of Plaintiffs' Motion for Final Approval, the Final Approval hearing, coordinating with Kroll, monitoring settlement administration, and responding to Settlement Class Member inquiries.

31. Included within **Exhibit A** is a chart setting forth the hourly rates charged for

6

lawyers and staff at my firm at the time the work was completed. Based on my knowledge and experience, the hourly rates charged by Class Counsel are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise. I have personal knowledge of the range of hourly rates typically charged by counsel in our field in New York, California, Florida, and elsewhere, both on a current basis and in the past. In determining Class Counsel's hourly rates from year to year, my partners and I have consciously taken market rates into account and have aligned our rates with the market.

32.  Through my practice, I have become familiar with the non-contingent market rates charged by attorneys in New York, California, Washington D.C, Connecticut, California and elsewhere (attached hereto as **Exhibit C** is a copy of the current LK firm resume, showing LK's offices are in New York, Washington D.C, Connecticut, San Francisco, and Los Angeles). This familiarity has been obtained in several ways: (i) by litigating attorneys' fee applications; (ii) by discussing fees with other attorneys; (iii) by obtaining declarations regarding prevailing market rates filed by other attorneys seeking fees; and (iv) by reviewing attorneys' fee applications and awards in other cases, as well as surveys and articles on attorney's fees in the legal newspapers and treatises.

33.  The information I have gathered shows that Class Counsel's rates are in line with the non-contingent market rates charged by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable class action work. In fact, comparable hourly rates have been found reasonable by various courts for reasonably comparable services, including:

  i.  *Laydon v. Mizuho Bank, Ltd.*, No. 1:12-cv-03419-GBD, ECF No. 837 (S.D.N.Y. Dec. 7, 2017), approving partner rates of $875 to $975 and associate rates of $325 to $600.

  ii. *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. April 26, 2016), approving partner rates of $834 to $1,125 and associate rates of $411 to $714.

7

iii. *In re Platinum & Palladium Commod. Litig.*, Slip Op. No. 10-cv-3617, 2015 U.S. Dist. LEXIS 98691, at *13 (S.D.N.Y. July 7, 2015), approving billing rates of $950 and $905 per hour and referring to a recent National Law Journal survey yielding an average hourly partner billing rate of $982 in New York.

iv. *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, Case No. 1:08-md-01963-RWS, 909 F. Supp. 2d 259, 271-72 (S.D.N.Y. 2012), approving fee award based on hourly rates ranging from $275 to $650 for associates and $725 to $975 for partners, as set forth in ECF No. 302-5.

v. *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liab. Litig.*, Case No. 15-md-02672-CRB, ECF No. 3053 (N.D. Cal. Mar.17, 2017), approving partner rates up to $1,600, and associate rates up to $790.

vi. *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. 07-md-1827-SI, ECF No. 1827 (N.D. Cal. 2013), an antitrust class action in which the court found blended hourly rates of $1000, $950, $861, $825, $820, and $750 per hour reasonable for the lead class counsel.

vii. *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. RG08366506, Order of Final Approval and Judgment filed November 8, 2012, a wage and hour class action, in which the court found the hourly rates of $785, $775, and $750 reasonable for the more senior class counsel.

viii. *Luquetta v. The Regents of the Univ. of California*, San Francisco Superior Ct. Case No. CGC-05-443007, Order Granting Plaintiff's Motion for Common Fund Attorneys' Fees and Expenses, filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the hourly rates of $850, $785, $750, and $700 reasonable for plaintiffs' more experienced counsel.

ix. *Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012), a civil rights class action brought by pre-trial detainees, in which the court approved a lodestar-based, *inter alia*, on 2011 rates of $850 and $825 per hour.

x. *Holloway et. al. v. Best Buy Co., Inc.*, Case No. 05-cv-5056-PJH (N.D. Cal. 2011) (Order dated November 9, 2011), a class action alleging that Best Buy discriminated against female, African American and Latino employees by denying them promotions and lucrative sales positions, in which the court approved lodestar-based rates of up to

8

    $825 per hour.

xi. *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), adopted by Order Accepting Report and Recommendation filed February 2, 2011, a class action in which the court found reasonable 2010 hourly rates of up to $835 per hour.

xii. *Qualcomm, Inc. v. Broadcom, Inc.*, Case No. 05-cv-1958-B, 2008 WL 2705161 (S.D. Cal. 2008), in which the court found the 2007 hourly rates requested by Wilmer Cutler, Pickering, Hale & Dorr LLP reasonable; those rates ranged from $45 to $300 for staff and paralegals, from $275 to $505 for associates and counsel, and from $435 to $850 for partners.

xiii. *Caccavale v. Hewlett-Packard Company* (E.D.N.Y., Oct. 20, 2025, No. 2:20-CV-974 (NJC) (ST)) 2025 WL 2960237, at *13, in which this Court approved rates hourly rate of $500 to partners in a FLSA case.

34. To date, my firm has also expended $3,606.25 in out-of-pocket costs and expenses in connection with the prosecution of this case. Attached as **Exhibit B** is an itemized list of those costs and expenses. These costs and expenses are reflected in the records of Class Counsel and were necessary to prosecute this litigation. Cost and expense items are billed separately, and such charges are not duplicated in Class Counsel's billing rates. These expenses include court fees, the mediation fee, and research fees.

35. I am of the opinion that Mr. Carbone and Mr. Adkins active involvement in this case was critical to its ultimate resolution. They took their roles as class representatives seriously, devoting significant amounts of time and effort to protecting the interests of the class. Without their willingness to assume the risks and responsibilities of serving as class representatives, I do not believe such a strong result could have been achieved.

36. Mr. Carbone and Mr. Adkins equipped Class Counsel with critical details regarding their experiences with Defendant. They assisted Class Counsel in investigating their claims, detailed their experiences as Users of the Limited Run Games mobile applications and the Website,

9

supplied supporting documentation, aided in drafting the Complaints, and frequently communicated with Class Counsel regarding preliminary settlement strategy. Mr. Carbone and Mr. Adkins have actively supported and presented to us the needful requirements during the Discovery stage of the litigation.

37. In short, Mr. Carbone and Mr. Adkins assisted Class Counsel in pursuing this action on behalf of the class, and their involvement in this case has been nothing short of essential.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 12th day of December, 2025 at New York, New York.

*/s/ Mark S. Reich*
Mark S. Reich
