**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X

JOHN CARBONE, RYAN ADKINS,
*individually and on behalf of all others*
*similarly situated*,

                            *Plaintiffs*,                            **MEMORANDUM**
                                                              **AND ORDER**

                    -against-                              24-cv-08861 (JMW)

LIMITED RUN GAMES, INC.,

                         *Defendant*.

----------------------------------------------------------------------X

**WICKS,** Magistrate Judge:

Plaintiffs John Carbone ("Carbone") and Ryan Adkins ("Adkins" and collectively, the "Plaintiffs") on behalf of themselves and all others similarly situated, commenced this class action against Defendant Limited Run Games, Inc. ("Defendant" or "Limited Run Games" and collectively, the "Parties") alleging violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. (*See generally*, ECF Nos. 1, 11.) Plaintiffs specifically allege that Defendant caused Plaintiffs' personally identifiable information to be sent to Facebook and other third parties without Plaintiffs' knowledge or consent. (ECF No. 11 at ¶ 9.) On August 21, 2025, this Court preliminarily approved the Class Action Settlement and conditionally certified the Class[1]

---

[1] The Class Members are "[a]ll persons who accessed the Limited Run Games Service in the United States and watched a pre-recorded video or purchased a video game containing a 'Cut Scene' between January 1, 2016 and June 20, 2025." (ECF No. 28-1 at 6.) The following are excluded from the Class,

    (1) the Judge or Magistrate Judge presiding over this Action and members of their families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

1

for settlement purposes. (*See* ECF Nos. 16, 21). Now before the Court is Plaintiffs' Motion for attorneys' fees, costs, expenses, and individual service awards (ECF No. 23), as well as Plaintiffs' Motion for Final Settlement Approval (ECF No. 28). Both motions are unopposed. A Fairness Hearing[2] was held on March 11, 2026, and no objections to the Settlement were heard or filed. (*See* Electronic Order dated 3/11/2026.) For the reasons stated on the record at the Fairness Hearing and those set forth below, Plaintiffs' Motions (ECF Nos. 23, 28) are **GRANTED**,[3] and the settlement is approved.

## <u>THE PROPOSED SETTLEMENT</u>

### <u>*Settlement Amount and Other Relief*</u>

The total settlement amount is $2,720,000.00 ("Settlement Fund"). (ECF No. 28-1 at 2.) This amount covers Class Member awards for those who timely submitted valid claims, "after deduction of Court-approved attorneys' fees and costs, service awards, [] notice and administration expenses."[4] (*Id.*) Each Member receives their "pro-rata share" of the Settlement Fund. (*Id.*)

---

(*Id.* at n.1.)

[2] A Fairness Hearing is the final step prior to settlement approval, where the Court provides members with the opportunity to be heard and object, and ensures that the settlement is fair and reasonable. *See What's Market: Process of Settling Class Actions*, Practical Law Practice Note w-000-4398; *Settling Class Actions: Process and Procedure*, Practical Law Practice Note 3-541-8765.

[3] Familiarity with the procedural history and background of this action is assumed herein. The Court points the reader to ECF Nos. 16 and 21, for a full recitation of the factual and procedural histories. In addition, the parties have consented to the undersigned for all purposes. (*See* ECF Nos. 24-25.)

[4] Kroll in support of final approval provides that "[a]s of February 19, 2026, Kroll has billed $93,219.04 for Settlement Administration Expenses incurred in the administration of this matter, which includes media costs. Kroll estimates that it will bill an additional $75,000 to $85,000 to complete the administration of this Settlement. The current estimate is subject to change depending on factors such as the number of Claim Forms remaining to be reviewed and/or any Settlement administration scope change not currently under consideration. This estimate is based on Kroll's many years of experience administering class action settlements" (ECF No. 28-3 at 6.)

In addition, upon final approval,

> Defendant shall not knowingly resume operation of the Meta Pixel, TikTok tracking technologies, Google tracking technologies, or the X pixel (formerly Twitter) on any portion of the Limited Run Games Service accessible in the United States to disclose to third parties the specific video content requested or obtained by a specific individual, unless and until the VPPA is amended, repealed, or otherwise invalidated, or unless Defendant first obtains VPPA-compliant consent.

(*Id.* at 7.)

### *Notice*

Kroll LLC ("Kroll"), the Settlement Administrator, previously and preliminarily approved by the Court, has provided "direct notice … via email and, where appropriate, postal mail, reaching the vast majority of identifiable Settlement Class Members." (ECF No. 28-1 at 3.) The following numbers illustrate the efforts made by Kroll to reach the class—"24,092 Settlement Class Members submitted timely Claim Forms, and 3,772 additional Claim Forms were accepted but untimely. This means a total of 27,864 claims have been accepted." (*Id.*) There are roughly 600 claims under review, and there have been only seventeen requests to opt-out. (*Id.*)

### *Class Member Release*

In accordance with the Settlement Agreement, the "Releasing Parties" [5] "shall be deemed to have fully, finally, and forever released and discharged the "Released Parties" [6] "from any and

---

[5] "Releasing Parties" refers to "Plaintiffs, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past or future heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations." (ECF No. 15-9 at § 1.28.)

[6] "Released Parties" refers to "Defendant Limited Run Games, Inc., as well as any and all of its respective present or past or future heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, sister companies, subsidiaries, divisions, licensors, licensees, associates, affiliates, employers,

3

all claims, demands, causes of action, damages, or liabilities of any kind whatsoever, whether known or unknown, accrued or unaccrued, suspected or unsuspected, arising out of or relating to the alleged disclosure, interception, use, or transfer of information through the use of the Meta Pixel or other pixels, cookies, tracking, or analytics technologies on the Limited Run Games Service." (ECF No. 15-9 at §§ 1.26, 3.)  These claims include any under the VPPA, and any other claims that could have been asserted in this action. (*Id.*)

### *Allocation of Settlement Fund and Fees*

Following final approval,

Defendant shall pay or cause to be paid into the Escrow Account the amount of the Settlement Fund ($2,720,000.00 USD), … within thirty (30) days after the later of (a) Preliminary Approval; and (b) Defendant's receipt of the payee's name, address for payment, and Form W-9. Settlement Class Members shall have until the Claims Deadline to submit an Approved Claim. Each Settlement Class Member with an Approved Claim shall be entitled to a pro rata portion of the Settlement Fund by electronic payment method approved by the Settlement Administrator or check after deducting the Settlement Administration Expenses, any Fee Award, and any incentive award, provided that they satisfy the criteria for the cash payment portion set out in the definition of Approved Claim. The Settlement Administrator shall pay from the Settlement Fund all Approved Claims by (i) electronic payment method approved by the Settlement Administrator or (ii) check with said checks being sent via first class U.S. mail to the Settlement Class Members who submitted such Approved Claims. Payments to all Settlement Class Members with Approved Claims shall be made within ninety (90) days after the Effective Date.

All cash payments issued to Settlement Class Members via check will state on the face of the check that it will expire and become null and void unless cashed within one hundred eighty (180) days after the date of issuance. To the extent that any checks issued to a Settlement Class Member are not cashed within one hundred eighty (180) days after the date of issuance, such uncashed check funds shall be redistributed on a pro rata basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who cashed checks during the initial distribution, but only to the extent

---

employees, agents, consultants, independent contractors, insurers, reinsurers, directors, managing directors, officers, partners, vendors, joint ventures, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations." (*Id.* at ¶ 1.27.)

each Settlement Class Member would receive at least $10.00 in any such secondary distribution and if otherwise feasible.

(ECF No. 15-9 at 9-10.)

## ANALYSIS

This Court previously found that Rule 23 was satisfied and certified the Class for settlement purposes. (*See* ECF Nos. 16, 21.) Likewise, the conditional approval of the collective action was granted. (*Id.*) The basis for approval and certification remains the same at this stage. *See In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) ("The Court in its opinion and orders providing the basis for its preliminary approval of the five settlements has already explained in detail why the Rule 23 and Grinnell factors support approval of each of the settlements. The Court re-adopts that analysis here….") Rather, the focus now at this final stage is fairness, reasonableness, and whether the settlement is adequate. *See id.* ("Because these subsequent developments only further support the fairness, reasonableness, and adequacy of the settlements, the Court gives its final approval to all five settlements.") Thus, for settlement purposes only, the Class and Collective are certified.

### Approval of the Class Settlement

> [T]o grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is fair, reasonable and adequate. Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement. Courts examine procedural and substantive fairness in light of the strong judicial policy favoring settlements of class action suits.

*Spagnuoli v. Louie's Seafood Rest., LLC*, No. 13-CV-4907 (JMA) (ARL), 2018 WL 7413304, at *3 (E.D.N.Y. Sept. 27, 2018) (citing Fed. R. Civ. P. 23(e)) (internal citations and quotations omitted).

Rule 23(e)(2) provides certain factors for the court to consider upon approval. Specifically, whether:

(A) the class representatives and class counsel have adequately represented the

class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:
   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorney's fees, including timing of payment;
   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendment, Rule 23(e)(2) the Second Circuit examined "the fairness, adequacy, and reasonableness of a class settlement according to the '*Grinnell* factors.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Now, the four Rule 23(e)(2) factors are the "procedural considerations and substantive qualities that should always matter to the decision whether to approve [a settlement] proposal." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). These factors do not displace the "traditional" *Grinnell* factors. Therefore, the Court must review the factors outlined in Rule 23(e)(2) in conjunction with the *Grinnell* factors. *Id.*; *see Ramon Hernandez, et al., v. Between the Bread 55th Inc., et. al.*, No. 17-CV-9541 (LJL), 2021 WL 12279220, at *2 (S.D.N.Y. Aug. 16, 2021) ("Additionally, courts in the Second Circuit consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), to determine whether the standards of Rule 23(e)(2) have been met.") The *Grinnell* factors include:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*

The "Rule 23(e)(2) factors [] add to, rather than displace, the *Grinnell* factors. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Indeed, there is significant overlap between the two sets of factors. *Id.* Both sets of factors are considered below.

### i.  *Adequate Representation by Class Representative and Class Counsel*

As set forth in this Court's Preliminary Approval Order (ECF No. 21 at 3, 11-12), Plaintiffs and Co-Class Counsel remain adequate representation for the Class, as circumstances at this time are unchanged. Plaintiffs' interest is adequately aligned with the Class members, as Plaintiffs shares the same claims, and Plaintiff has played a large role in assisting Class Counsel with this matter since its inception. (ECF No. 21 at 10-11.) Likewise, Plaintiffs' counsel, are sufficiently experienced and qualified to represent the class. (ECF No. 28-1 at 10-11.) Class Counsel has expended numerous hours on this matter and has handled hundreds of similar cases. (ECF No. 23-1 at 16.) This factor remains in favor of granting final approval.

Accordingly, the Court confirms the appointment of Plaintiffs as Class Representatives, as well as Gucovschi Rozenshteyn, PLLC ("GR") and Levi & Korsinsky LLP ("Levi") as Class Counsel for settlement purposes.

### ii.    *Arms-Length Negotiations After Meaningful Discovery*

At this final stage, "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a settlement agreement based on its negotiation at arm's length." *Moses*, 79 F.4th at 243.  Rather, the Court "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations."  *Marin v. 310 Bowery Grp. LLC*, No. 24-CV-1340 (SLC), 2025 WL 2267785, at *6 (S.D.N.Y. Aug. 8, 2025) (internal citations omitted). This factor addresses the same substance as *Grinnell* Factor 3 (the stage of the proceedings and the amount of discovery completed).

Here, the parties did negotiate at arms-length. Indeed, extensive settlement discussions were had with the assistance of mediator, Justice Robert Dondero (Ret.) of JAMS, [7] leading to the settlement. (ECF No. 28-1 at 2.) Plaintiffs aver that the settlement only occurred after the meaningful formal mediation as well as further mediation statements addressing the legal issues, positions and risks. (*Id.* at 4) This factor weighs in favor of final approval. *See Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-885 (FB) (SMG), 2020 WL 8642081 at *6–7 (E.D.N.Y. Oct. 8, 2020).

### iii.    *Adequate Relief for the Class*

The Court is required to consider whether the settlement provides adequate relief to the putative class.  *See* Fed. R. Civ. P. 23(3)(2)(C).  This includes a consideration of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing

---

[7] The Court recognizes and appreciates the good work and efforts of Justice Robert Dondero (Ret.) in helping resolve the dispute.

relief to the class ...; (iii) the terms of any proposed award of attorney's fees ...; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* As set forth in this Court's Preliminary Approval Order (ECF No. 21 at 19-20), the above factors to be considered are evaluated in tandem with the applicable *Grinnell* factors.

### a. Costs, Risks, and Delay of Trial and Appeal

This Rule 23(e)(2) factor "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation (*Grinnell* Factor 1), risks of establishing liability (*Grinnell* Factor 4), the risks of establishing damages (*Grinnell* Factor 5), and the risks of maintaining the class through trial (*Grinnell* Factor 6). *See Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG)(RER), 2021 WL 1259559, at *5 (E.D.N.Y. 2021) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.)  "Class action suits have a well-deserved reputation as being most complex." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG)(PK), 2021 WL 508339, at *5 (E.D.N.Y. 2021).  This case is no exception.

Here, it is apparent that prolonging litigation would only generate additional cost and delay.  If the case proceeded, there would have been extensive motion practice to dismiss, class certification, and summary judgment, all of which would be costly. (*See* ECF No. 15-1 at 8.) The risk of not receiving class certification or any recovery also weighs in favor of approving settlement. (*See id.*) Notably, VVPA claims are not as common and create a significant risk to Plaintiffs if trial proceeded. (Id. at 9; 23-1 at 10.) Additionally, Defendant denies any wrongdoing and does not believe that Plaintiffs can support their claims. (ECF No. 23-1 at 2.) Proceeding to trial or protracted proceedings in this matter would result in substantial disputes over damages, thereby exposing the Class to significant risk and expenses. Taking into account the risks, costs

and delay of trial and possible appeal, the Court finds this factor to weigh heavily in favor of final settlement approval. *See Rosenfeld*, 2021 WL 508339 at *5.

### b. *Effectiveness of the Proposed Method of Distributing Relief to the Class*

An adequate distribution method is one that can "deter or defeat unjustified claims" without imposing an undue demand on class members. *Id.* (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).  The method "need not be perfect," but rather merely needs to have a reasonable, rational basis, especially when recommended by experienced counsel. *Id.* (quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.,* No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007)); *see also In re WorldCom, Inc. Sec. Litig.,* 288 F. Supp. 2d 319, 244 (S.D.N.Y. 2005).

Here, Kroll, as the Class Administrator, was provided with a list of "358,383 available names, email addresses, and addresses of potential Settlement Class Members." (ECF No. 28-1 at 20.) The notices were emailed and/or sent via postcard notice, as approved by the Court, reaching "98.95%" of the Class. (*Id.*) Kroll provides a helpful chart to summarize the notices.

| Direct Notice Program Dissemination & Reach | | |
| --- | --- | --- |
| **Description** | **Volume of Class Members** | **Percentage of Class Members** |
| Settlement Class Members identified in the Settlement Class List | 358,383 | 100.0% |
| **Direct Notice Campaign** | | |
| (+) Email Notices Sent (Initial Campaign) | 358,363 | 99.99% |
| (-) Total Email Notices returned as undeliverable | (30,974) | 8.64% |
| (+) Mail Notices Sent (Initial Campaign) | 20 | 0.01% |
| (+) Total Mail Notices sent for Email Notice bouncebacks | 30,974 | 8.64% |
| (-) Total Mail Notices returned as undeliverable | (3,753) | 0.01% |
| **Direct Notice Program Reach** | | |
| (=) Likely Received Direct Notice | 354,630 | 98.95% |

(ECF No. 28-3 at 5.)

Indeed, at the Fairness Hearing, Class Counsel confirmed the Notice Program and the process thereto. All cash payments will be sent within ninety (90) days of final approval. (*See* ECF No. 15-9 at § 2.) The cash payments issued to the Settlement Class Members will state on the face of the check that they will expire and become null and void after one hundred eighty (180) days after the date of issuance. (*Id.*) Kroll will also have the responsibility of processing the payment of Approved Claims to the Settlement Class (*Id.* at § 1.30.) Therefore, the undersigned finds this factor to weigh in favor of approval.

### c.   Terms of Any Proposed Attorneys' Fees

Class Counsel seeks an award of 33.3% ($906,666.67)[8], representing a third of the Settlement Amount. (ECF No. 28-1 at 8; *see also* ECF No. 23.) "[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014). "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Rosenfeld*, 2021 WL 508339 at *6 (quotes omitted) (collecting cases); *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203 (AKT), 2018 WL 4861391, at *2 (E.D.N.Y. 2018).

Here, the proposed request for attorneys' fees limited to one-third of the Settlement Amount is well within the range of reasonableness. *Azogue v. 16 for 8 Hosp. LLC*, No. 13-CV-7899, 2016 WL 4411422, at *6 (S.D.N.Y. 2016) (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CIV. 3693 PGG, 2013 WL 5492998, at *26 (S.D.N.Y. 2013) ("Class Counsel's request for

---

[8] Upon review of the instant motions, it appears that the Motion for Attorneys' Fees includes a sum of $906,666.00, whereas the Motion for Final Approval states a sum of $906,666.67. One-third of the settlement fund is $906,666.67, which is the amount the Court will use.

one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'")). Therefore, the undersigned finds this factor weighs in favor of approval.

### d. Any Agreement Required to be Identified under Rule 23(e)(3)

This factor requires the Court to consider any agreements made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(3). Plaintiffs aver that no such agreement exists apart from the Settlement. (ECF No. 28-1 at 13.) However, the Court must review the provisions within the Settlement Agreement. As accepted in the preliminary review, and pursuant to the Settlement Agreement, the parties have agreed that the Class Representatives may receive, subject to Court approval, incentive or service awards of up to $2,500. (ECF No. 15-9 at § 8.3.) With two Class Representatives, Carbone and Adkins, the total amount of $5,000 taken from the Settlement Fund is more than reasonable. Service payments have routinely been awarded to named plaintiffs. *See e.g., Campbell v. Bukhari Grp. LLC*, No. 22-CV-2813 (PK), 2025 WL 1874485, at *13 (E.D.N.Y. July 8, 2025) (preliminary approving service award) ("Courts routinely grant requests for service awards in federal class actions"); *Buchanan*, 2020 WL 8642081, at *8 ("'incentive' or 'service'" award[s] [are] not uncommon in class action cases and [are] 'meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit'") *Cohan*, 2018 WL 4861391, at *6 ("Service awards are common in class action cases").

Further, as it relates to the Settlement Agreement's release provisions, "[a] settlement cannot be fair, reasonable and adequate if the Class-wide release is overbroad." *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117 (LTS) (BCM), 2017 WL 5956907, at *14 (S.D.N.Y. 2017), *report and recommendation adopted*, No. 14-CV-7117 (LTS)(BCM), 2017 WL 5956770 (S.D.N.Y. 2017). The Settlement Agreement provides that each Class Member agrees to release

12

the Releasees "of all arising out of any facts, transactions, events, matters occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure, use, interception or transfer of information of or related to the Settlement Class Members through use of the Meta Pixel, or other pixels, cookies, or tracking or analytics tools on the Limited Run Game Service." (ECF No. 15-1 at 5.) This release language is directed at the conduct that occurred with disclosure of the members' PII and as such, is limited to those claims. Therefore, it is not overbroad.

Accordingly, the Court finds this factor weighs in favor of approval.

### iv. Equitable Treatment of Class members Relative to One Another

This factor calls the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  In other words, "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

The Settlement Agreement as discussed *supra*, each Class Member receives a "pro-rata" share of the Settlement Fund when Kroll issues their checks. *See Meredith Corp v. SESAC*, LLC, 87 F.Supp.3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably… and has the benefit of simplicity"); *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK)(LB), 2021 WL 7906584, at *9 (E.D.N.Y. 2021) (same); *see also Jackson v. Ampac Paper, LLC*, No. 22-CV-3120 (NSR) (JCM), 2025 WL 2346065 at *7 (S.D.N.Y. Aug. 13, 2025) (stating that pro rata distributions of a net settlement amount is evidence of equitable treatment). Plaintiffs aver "all Class Members have suffered the

same injuries with little to no difference in injuries between individual Class Members." (ECF No. 28-1 at 13.) Further the scope of the release applies uniformly to all Class Members. Thus, this factor weighs in favor of approval.

### v. Ability of Defendants to Withstand Greater Judgment

This is *Grinnell* Factor 7, which "does not fit neatly within any of the factors enumerated in Rule 23(e)(2)(C) but adds value to the Court's analysis." *Cymbalista*, 2021 WL 7906584, at *10. The principle underlying this factor is that if a defendant could not withstand a judgment greater than the amount provided for in the settlement, the settlement is more likely to be reasonable, fair, and adequate. *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *8 (S.D.N.Y. Oct. 21, 2022).

> As previously found in the preliminary approval,

> Plaintiffs contend that they are unaware whether the Defendant could withstand a greater judgment. (ECF No. 15-1 at 11.) As mentioned, the Parties have agreed to settle for $2,720,000.00. Although the agreed upon payment is relatively large, it is less so when considering the size of the Settlement Class. Therefore, this factor is neutral. However, as Plaintiffs point out, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.Supp.2d 179, 201 (S.D.N.Y. 2012).

*Carbone v. Ltd. Run Games, Inc.*, No. 24-CV-08861 (NJC) (JMW), 2025 WL 3481450, at *12 (E.D.N.Y. Aug. 21, 2025).

### vi. Reaction of the Class

"'It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *Schutter v. Tarena Int'l, Inc.*, No 21-CV-3502 (PKC), 2024 WL 4118465 at *10 (E.D.N.Y. Sept. 9, 2024) (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)). In evaluating *Grinnell* Factor 2, "[c]ourts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement." *In re Sinus Buster Prods. Consumer*

14

*Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014). Here, out of the 358,383 known Class Members, of which 98.95% received direct notice, only seventeen timely mailed exclusions, and no objections were filed by the notice deadline of January 20, 2026. (ECF No. 28-3 at 6.) Indeed, no objections were filed by the deadline date of January 20, 2026, nor were any objections presented at the Fairness Hearing. Therefore, the Court finds this factor to weigh heavily in favor of approval of this Settlement.

### vii.    *Reasonableness of the Settlement*

*Grinnell* Factors 8 and 9 require the Court to consider the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. These two factors are often combined for the purposes of analysis. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47–48.

Determining whether a settlement amount is reasonable does not necessarily involve "a mathematical equation yielding a particularized sum." *Henry v. Little Mint, Inc.*, No. 12-CV-3996 (CM), 2014 WL 2199427, at *10 (S.D.N.Y. 2014). Rather, it considers a range of reasonableness which recognizes the uncertainties of law and fact and the accompanying costs of litigation. *Id.* For instance, a settlement which allows Class Members to be immediately paid is reasonable even if it means sacrificing a hypothetically larger amount if the matter were to proceed. *Id.*

The Settlement Fund is $2,720,000. The Class will receive their settlement payments shortly after the final approval and "will yield a significant benefit to each of the participating Class Members." *Carbone*, 2025 WL 3481450, at *13. "[S]ettlements have been approved as reasonable where the settlement provides a 'meaningful benefit' to the class." *In re 3D Sys. Sec.*

15

*Litig.*, No. 21-CV-1920 (NGG)(TAM), 2024 WL 50909, at \*12 (E.D.N.Y. Jan. 4, 2024) (internal citations omitted). Moreover, "[t]his method is undoubtedly sooner than if each Class Member waited to receive payment after trial, assuming they were successful." *Abarza v. Spirit Pharms. LLC*, No. 23-CV-03637 (JMW), 2025 WL 1519147, at \*13 (E.D.N.Y. May 28, 2025). It therefore follows that if the Class were to continue litigation, it may be subject to motion practice (*i.e.*, motion to dismiss, summary judgment) and the other uncertainties that could ensue. *See Schutter*, 2024 WL 4118465, at \*12 ("Given the many legal and factual uncertainties involved in litigation, this factor favors settlement approval.") This settlement amount reflects a balance of the strength of the Class Members' claims versus the risk of trial and thus appears to fall within the "range of reasonableness" set out in the eighth and ninth *Grinnell* factors. *See Henry*, 2014 WL 2199427 at \*10.

Considering the foregoing, the Court grants final settlement approval.

## D. **Attorneys' Fees and Costs**

In class actions, the court may award reasonable attorney's fees and costs "that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In addition, Rule 23(e)(2)(C)(iii) also requires the Court to look at "the terms of any proposed award of attorney's fees," which includes the timing of such payments. *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at \*14 n.14 (E.D.N.Y. Jan. 21, 2022) (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)).  "Under Rule 23(h), district courts have discretion to choose between the 'lodestar' and the 'percentage of the fund method' for assessing the reasonableness of attorney's fees, although the trend in the Second Circuit is towards the latter method." *Caccavale v. Hewlett-Packard Co.*, No. 20-CV-974 (NJC) (ST), 2025 WL 2960237, at \*11 (E.D.N.Y. Oct. 20, 2025) (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). "Under a

16

lodestar analysis, courts 'calculate[ ] a given attorney['s] fee by multiplying an attorney's reasonable hourly rate by the number of hours that the attorney spent on the case.'" *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 67 n.2 (2d Cir. 2019). The Second Circuit encourages district courts to do a lodestar cross-check if the percentage method is used. *See C.K. through P.K. v. McDonald*, No. 22-CV-1791 (NJC) (JMW), 2026 WL 220984, at *25 (E.D.N.Y. Jan. 15, 2026). Irrespective of which method is chosen, the Court must analyze the proposed award of fees with the following well-known *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995(EK)(JAM), 2025 WL 2773748, at *6 (E.D.N.Y. Sept. 29, 2025) (same). These *Goldberger* factors are used when there is a common fund for the benefit of the Class. *See In re Nassau Cnty. Strip Search Cases*, 12 F. Supp. 3d 485, 492 (E.D.N.Y. 2014) (quoting *Goldberger,* 209 F.3d at 47) ("It bears emphasis [however,] that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances."); *see also Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 72 (2d Cir. 2019) ("[W]here a class action results in a common-fund settlement for the benefit of the class, the common-fund doctrine applies and permits a district court to use its discretion to award class counsel either an unenhanced lodestar fee or a fee calculated as a percentage of the settlement fund.") It is within these legal principles that the instant fee application is analyzed.

The parties have reached a settlement in principle with a Settlement Fund of $2,720,000.00. (ECF No. 23-1 at 3.) As a result, Plaintiffs seek the following: (i) a fee award of

17

$906,666.67 which represents one third of the Settlement, and (ii) reasonable, costs and expenses in the amount of $7,564.41. (*See id.* at 1-2.) Each request is separately considered.

Here, class counsel consists of the firms GR and Levi. Attorney Mark S. Reich ("Reich") on behalf of the law firm of Levi outlines that his firm has spent 239.7 hours in connection with the prosecution of this case. (ECF No. 23-2 at 6.) Second, Attorney Adrian Gucovschi ("Gucovschi"), from the law firm of GR describes that his firm has spent 114.4 hours in this matter.  (ECF No. 23-8.) Counsel represents that a total of 354.11 hours to date have been spent collectively which, based upon their current hourly rates, totals $222,767.50. (ECF No. 23-1 at 16.) However, there is much left to do, such as preparation for the fairness hearing, administration upon final approval, and any other administrative tasks. Class counsel seeks fees equaling a total of one-third from the Settlement, which would be $906,666.67. (ECF No. 23-1 at 4-5.)

While the requested amount is clearly higher than what would be yielded under the lodestar analysis, such fees as requested here based upon 1/3 are routinely awarded. In circumstances where, like here, the lodestar is lower than the requested fees, Courts have applied a multiplier.[9]  The Court has reviewed the billing records provided along with counsel's declarations and finds the hours spent reasonable, not excessive or redundant. (*See* ECF Nos. 23-2, 23-3, 23-6, 23-8.) Using the proper calculation of the lodestar multiplier by dividing the requested one-third fee of $906,666.67 by the lodestar amount of $222,767.50, the multiplier is 4.07. "Courts regularly award lodestar multipliers from 2 to 6 times lodestar." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (collecting cases). Thus, the

---

[9] A "lodestar multiplier" refers to the calculation of  "dividing the [requested] fee award by the lodestar" to determine reasonableness. *See James v. China Grill Mgmt., Inc.*, No. 18-CV-455 (LGS), 2019 WL 1915298, at *3 (S.D.N.Y. Apr. 30, 2019).

multiplier of 4 is within the acceptable range of attorneys' fees awarded in class action settlements. *See e.g., Nordhaus*, No. 15-CV-6689 (JPO), 2024 WL 1514298, at *3 (S.D.N.Y. Apr. 8, 2024) (collecting cases awarding multiplier of 2-6); *Sewell v. Bovis Lend Lease, Inc.*, No. 9-CV-6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012); *Perks v. TD Bank, N.A.*, No. 18-CV-11176 (VEC), 2022 WL 1451753, at *3 (S.D.N.Y. May 9, 2022). Moreover, a review of the relevant *Goldberger* factors suggests that such fees are reasonable and should be approved.

*First*, class counsel has spent 354.11 hours on this matter, which includes *inter alia*, discovery, engaging in mediation, investigating the matter, drafting the settlement and communicating with Class Members. (ECF No. 23-1 at 7-8.) In addition, "work in this litigation is far from over" as the administration of the Settlement and holding the Fairness Hearing will result in at least an additional "fifty hours" or so. (*Id.* at 8.)

*Second and third*, the risks of litigation are high as VPPA claims, such as here, hardly make it to certification or very far in the litigation process. (*Id.* at 10.) Indeed, it was only recently that the Second Circuit outlined the definitions under the VPPA. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 536 (2d Cir. 2024), *cert. denied*, No. 24-994, 2025 WL 3506972 (U.S. Dec. 8, 2025) ("The VPPA defines "consumer" to mean "any renter, purchaser, or subscriber of goods or services from a video tape service provider." … But the Act doesn't define most of the words within that definition, including "goods or services" and "subscriber." We must construe both these terms for the first time in this Circuit."); *see also Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), *cert. denied*, No. 25-228, 2025 WL 3506993 (U.S. Dec. 8, 2025) ("as a matter of first impression, 'personally identifiable information' under VPPA encompasses information that would allow an ordinary person to identify a consumer's video-watching habits, but not information that only a sophisticated technology company could use to

do so"). Moreover, the amount of potential members here – 27,864 timely confirmed claims with 600 more to be confirmed – demonstrates the great size of this action and complexities of the litigation. (*See* ECF No. 28-1 at 3.) In addition, Defendant denies any and all liability here, which if the case were to proceed, would create a high risk for Plaintiffs. (ECF No. 23-1 at 2.)

*Fourth*, Class Counsel's experience demonstrates the level of representation required for this type of case. As set forth in the Preliminary Approval (*see* ECF No. 21 at 11-12), counsel has handled numerous class actions and has likewise been appointed as class counsel in such cases. (ECF No. 23-1 at 12-13.) Indeed, the resumes attached to the application for attorneys' fees demonstrate Class Counsel's expertise in handling complex class actions and having favorable results. (*See* ECF Nos. 23-5, 23-7.)

*Fifth*, the request fee in relation to the settlement, is an amount that Courts have routinely approved. *See Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *10 (S.D.N.Y. Jan. 15, 2025) (collecting cases and awarding 1/3 of the settlement fund for attorneys' fees); *In re PPDAI Grp. Inc. Sec. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *16 (E.D.N.Y. Jan. 21, 2022) (discussing that it is very common to see one-third as the fee award in cases having settlement funds under ten-million dollars). "It is common in this District for the Court to approve fee awards in the range of 25%–33%." *Lee v. Springer Nature Am., Inc.*, No. 24-CV-4493 (LJL), 2025 WL 3523134, at *12 (S.D.N.Y. Dec. 9, 2025).

*Sixth*, in consideration of public policy, "'society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect consumer rights, particularly where it is unlikely that the Class Members will pursue litigation on their own for economic or personal reasons." (ECF No. 23-1 at 14.) "Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to

pursue such actions on a contingency fee basis." *In re Grana y Montero S.A.A. Sec. Litig.*, No. 17-CV-01105 (LDH)(ST), 2021 WL 4173684, at *18 (E.D.N.Y. Aug. 13, 2021), *report and recommendation adopted*, No. 17-CV-01105 (LDH)(ST), 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021). "In addition to providing compensation to injured class members, the litigation and settlement of plaintiffs' claims incentivizes retailers to take stronger data-protection measures. [Here, Class Counsel] also undertook this case on a contingency basis with no guarantee that its time and expenses would be recovered." *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *21 (S.D.N.Y. June 8, 2022).

As noted, when "calculating attorneys' fees, courts have used one of two methods: the 'lodestar' method and the 'percentage-of-recovery' method. *Singh v. Anmol Food Mart, Inc.*, 768 F. Supp. 3d 434, 446 (E.D.N.Y. 2025) (citing *Allen v. Taylor*, 795 Fed. App'x 79, 80 (2d Cir. 2020)). The Second Circuit has held that either method is available for district courts to use when calculating attorneys' fees. "The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 415–16 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)) (citing *In re IMAX Sec. Litig.*, 2012 WL 3133476, at *5 (S.D.N.Y. 2012)); *see also Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-CV-4216 (RLE), 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014) (internal citations omitted) ("Although the Court has discretion to award fees based on either the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.") The lodestar method, "creates an unanticipated disincentive to early settlements,

tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-0940 (DLI)(JO), 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019) (citation omitted).

> [I]t is very common to see 33% contingency fees in cases with funds of less than $10 million. Courts … routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness. Class Counsel's request … is reasonable and consistent with the norms of class litigation.

*Abarza v. Spirit Pharms. LLC*, No. 23-CV-03637 (JMW), 2025 WL 1519147, at *10 (E.D.N.Y. May 28, 2025) (citations and quotations omitted) (collecting cases); *see id.* (quoting *Rosenfeld*, 2021 WL 508339, at *5 ("Class action suits have a well-deserved reputation as being most complex.")).

Accordingly, in evaluating the requested fees amount in accordance with the *Goldberger* factors and the trend in this Circuit, the application is approved.[10]

Next, reimbursement of costs and expenses in the amount of $7,564.41 is sought. (ECF No. 23-1 at 2.) "When the lion's share of expenses reflects the typical costs of complex litigation such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses, courts should not depart from the common practice in this Circuit of granting expense requests." *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995 (EK)(JAM), 2025 WL 2773748, at *11 (E.D.N.Y. Sept. 29, 2025) (quoting *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016)). "The court's role in this context is 'to act as a fiduciary who must serve as a guardian of the rights of absent class members.'" *Schutter*, 2024 WL 4118465, at *12 (quoting *McDaniel*, 595 F.3d at 419).

---

[10] The Court has also considered the timing of the payment of fees as required under Fed. R. Civ. P. 23(e)(2)(C)(iii). Indeed, no payments shall begin prior to the Fairness Hearing, and the "Fee Award shall be payable within five (5) business days after the Settlement becomes Final." (*See* ECF No. 15-9 at § 8.2.)

First, the Levi firm has expended a total of $3,606.25 in out-of-pocket costs and expenses in connection with the prosecution of this case. (ECF No. 23-2 at 9.) Levi also submits documentation of the itemized costs and expenses, which include court fees, mailing fees, the mediation fee, and research fees. (ECF No. 23-4.) Second, the GR firm has spent $3,958.16 in costs throughout this action. (ECF No. 23-6 at 3-4.) This sum reflects the mediation fee and initial court filing fee. (ECF No. 23-9.) The above-mentioned fees are routinely approved. *See e.g., In re Canon U.S.A. Data Breach Litigaton*, No. 20-CV-6239 (AMD)(SJB), 2024 WL 3650611, at *9-10 (E.D.N.Y. Aug. 5, 2024) (approving costs for filing fees, travel, and process servers); *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-CV-03334 (JMW), 2023 WL 4838156, at *13 (E.D.N.Y. July 28, 2023) (approving costs for mediation, investigations, filing fees, and service fees); *Zhu v. Wanrong Trading Corp.*, No. 18-CV-417 (ENV)(MMH), 2024 WL 4351357, at *17 (E.D.N.Y. Sept. 30, 2024) (same).

Accordingly, upon review of the declarations and supporting documents, the Court finds the requested attorneys' fees, costs and expenses are reasonable and are therefore granted.

### E.  Service Awards

Plaintiffs seek a service award for Class Representatives, Carbone and Adkins, of $2,500 each for their critical participation in this case by spending significant time protecting the class members' interests, investigating their claims, assisting in pleading drafting, and their role in having the case progress. (ECF No. 23-1 at 18.) Indeed, no opposition to this request has been filed, weighing in favor of approval.

Determining whether a plaintiff should be granted an additional service or incentive award is within the court's discretion and is meant to compensate a plaintiff for any personal risk incurred by his or her efforts. *See Cooper v. Mount Sinai Health Sys., Inc.*, No. 23-CV-09485

23

(PAE), 2025 WL 3074337, at *5 (S.D.N.Y. Nov. 4, 2025) (discussing service awards and awarding $2,500 to each class representative); *Schutter*, 2024 WL 4118465, at *12 (awarding service awards of $2,500 to $10,000). Notably, "such service awards are common in class action cases and are important to compensate lead plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained." *Rodriquez v. It's Just Lunch Int'l*, No. 07-CV-09227 (SN), 2020 WL 1030983, at *11–12 (S.D.N.Y. Mar. 2, 2020).  The awards sought here are within the range awarded and are fairly modest compared to others. *See Hart v. BHH, LLC*, No. 15-CV-4804 (WHP), 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) ("Awards on an individualized basis have generally ranged from $2,500 to $85,000."); *see also Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG)(PK), 2022 WL 2093028, at *5 (E.D.N.Y. Jan. 19, 2022) (granting $15,000 in service awards).

Accordingly, the service awards of $2,500 each are approved. *See Lee v. Springer Nature Am., Inc.*, No. 24-CV-4493 (LJL), 2025 WL 3523134, at *14 (S.D.N.Y. Dec. 9, 2025) ("Courts have approved service awards ranging from $2,500 to $10,000 in other VPPA and privacy cases.")

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 23) and Motion for Final Approval of the Class Action Settlement (ECF No. 28) are **GRANTED**, and it is hereby **ORDERED** that:

(i)    The Court incorporates by reference the definitions set forth in the Settlement Agreement and the Preliminary Approval Order;

(ii)   The Court finds that it has personal jurisdiction over Defendant and subject-matter jurisdiction over this matter, the Parties, and all Settlement Class Members;

24

(iii) The Settlement was entered into in good faith following arm's-length negotiations and is non-collusive;

(iv) The Settlement is, in all respects, fair, reasonable, and adequate, and is in the best interests of the Settlement Class, and is therefore this Court grants final approval of the Settlement;

(v) Settlement Representative, Limited Run Games, the Settlement Administrator, and Settlement Class Members shall consummate the Settlement according to the terms of the Settlement Agreement;

(vi) A list of those Settlement Class Members who have timely and validly elected to opt out of the Settlement and the Settlement Class in accordance with the requirements in the Settlement (the "Opt-Out Members") has been submitted to the Court in the Declaration of Patrick M. Passarella, filed in advance of the final approval hearing, which can be found at ECF No. 28-3, Exhibit J. The persons listed in that exhibit are not bound by the Settlement or this Final Approval Order and Judgment, and are not entitled to any of the benefits under the Settlement. Opt-Out Members listed in ECF No. 28-3, Exhibit J, shall be deemed not to be Plaintiffs Releasing Parties;

(vii) For purposes of the Settlement and this Final Approval Order and Judgment, the Court hereby finally certifies for settlement purposes only the following Settlement Class:

> All persons who accessed the Limited Run Game Service in the United States and watched a pre-recorded video or purchased a video game containing a Cut Scene between January 1, 2016 and the present. "Limited Run Game Service" means the Limited Run Games website (www.limitedrungames.com) and all other digital platforms or applications owned or operated by Defendant where video content is available to be viewed and/or video games are available for purchase.

> Excluded from the Settlement Class are (1) the Judge and Magistrate Judge presiding over this Action and their immediate family members and staff members; (2) Limited Run Games, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Limited Run Games has a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

(viii) The Court grants final approval to the appointment of John Carbone and Ryan Adkins as the Settlement Class Representatives. The Court concludes that the Settlement Class Representatives have fairly and adequately represented the Settlement Class.

25

The Court grants Settlement Class Representatives a Service Award in the amount of $2,500 each. The Service award shall be paid in accordance with the Settlement Agreement. The Court finds that this payment is justified in light of the service to the Settlement Class;

(ix)     Pursuant to Rule 23(g), the Court grants final approval to the appointment, of Adrian Gucovschi of Gucovschi Rozenshteyn, PLLC, and Mark S. Reich and Michael N. Pollack of Levi & Korsinsky, LLP as Class Counsel for the Settlement Class;

(x)      The Court grants the Motion and awards Class Counsel (as well as any agents, vendors or experts with which they may have worked on this matter) $906,666.67 for their fees and expenses in the case, hereby extinguishing any claims for any such fees, costs or expenses as against the Defendant Released Parties. Class Counsel's fee and expense award shall be paid in accordance with the Settlement Agreement. The Court finds the amount of fees and expenses to be fair and reasonable;

(xi)     This action is therefore dismissed with prejudice, without fees or costs to any Party except as provided in this Final Approval Order and Judgment;

(xii)    Without affecting the finality of this Judgment in any way, this Court retains continuing jurisdiction over the Parties and the Settlement Class for the administration, consummation, and enforcement of the terms of the Settlement Agreement as set forth in the Settlement Agreement; and

(xiii)   The Clerk of the Court is directed to enter Judgment accordingly and close out the case.

Dated: Central Islip, New York
        March 11, 2026

                                        S O   O R D E R E D:

                                        /S/ *James M. Wicks*
                                        JAMES M. WICKS
                                        United States Magistrate Judge

26